## CITY OF TIMPSON v. POWERS.
### No. 2840.

Court of Civil Appeals of Texas. Beaumont.

July 27, 1938.

146

Bibb & Bibb, of Marshall, for appellant.

Sanders & McLeroy, of Center, for appellee.

COMBS, Justice.

Ben Powers, the plaintiff, was employed by the city of Timpson, which was defendant in the trial court, along with other employees, all members of a crew of workmen who were engaged in setting electric light poles upon which were to be strung the electric lines. The existing electric lines had been placed a number of years before on poles some twelve or fifteen feet in height and the insulation had rotted away, leaving the metal wires exposed and the lines had sagged to where they were in places, particularly at the point where the injury complained of occurred, about ten or twelve feet above the ground. Plaintiff was working as a common laborer and with others of the crew was engaged in placing one of the poles in the hole which had been dug for it. The new line of poles was being put along Timpson Street and in close proximity to the old line. When placing the poles a truck containing a form of derrick or metal hoisting arrangement was used to pick the pole up, swing it around into position and put it into the hole. The pole had been placed in the hole and plaintiff Powers was engaged in swinging the hoisting device around so as to hook some portion of it onto the truck when those operating the hoisting arrangement in some manner brought it in contact with the exposed and uninsulated electric line, which was carrying a current of 2300 volts. Powers, having his hand on the truck, received an electric shock which knocked him down, and he was for a short time unconscious. He was revived, however, and worked the balance of the day.

Plaintiff alleged that as a result of the electric shock his entire nervous system was seriously damaged and injured and impaired and his muscles, nerves and tissues in the entire body were injured; that his heart was injured and that he now suffers from high blood pressure and impaired function of his heart and nervous system, as a result of which he constantly suffers stiffness and soreness in his muscles, back, arms, legs and neck, as well as soreness in his chest, which have wholly incapacitated him for work continuously up to the time of the trial, and he sued for damages in the sum of $5,000. He charged the defendant with negligence in maintaining the high voltage elec-

tric lines in question in a dangerous condition and in failing to place warning signs to inform the plaintiff of the dangerous condition existing at the place where the accident occurred, and in failing to furnish the plaintiff a safe place in which to work. It was alleged, in that connection, that he had been working for the city but a few days, was wholly inexperienced in electrical work, and did not know of the dangerous condition existing by reason of the matters alleged. The defendant answered by general demurrer, general denial and pleas that the defendant was engaged in reconstruction and in rebuilding the electric lines and that the defendant was not negligent as to the plaintiff in maintaining such condition as alleged; pleas that the injury was the result of the negligence of the plaintiff's fellow servants; pleas that the plaintiff assumed the risks and dangers of the existing conditions and, therefore, could not recover of the defendant.

The evidence showed that the old electric lines which were to be replaced by the new construction were in a dangerous condition. The insulation had rotted off; the poles had rotted and the line had sagged in many places. At the point of injury the lines were within some ten or twelve feet of the ground. A new line of poles were being set along the same side of the street that the old line was on. However, the crew that the plaintiff Powers was working with appeared to have been engaged merely in placing the poles for the new line. They were not engaged in removing the old line or in repairing it. The medical testimony with respect to the plaintiff's injuries was conflicting as to whether his condition, existing at the time of the trial, was produced by the injury or resulted from natural causes. The evidence was also conflicting as to whether the plaintiff and other employees had been warned as to the dangerous condition of the old line at the place where the injury occurred, and of the fact that said line was carrying electric current of high voltage. The plaintiff admitted that he had been warned that the lines in another part of the town where he had worked were live wires but denied that he had received any warning with reference to the lines along the street where he was working at the time of the injury.

The case was submitted to the jury on special issues, in response to which the jury found that the plaintiff had received his injuries as alleged, that the defendant was negligent in maintaining its electric lines in a dangerous condition, that the defendant failed to place some character of warning at the place where the accident occurred, that such acts of negligence were proximate causes of the plaintiff's injuries. The jury also found in favor of the plaintiff and against the defendant on the defensive issues of contributory negligence, assumed risk, and negligence of a fellow servant. They also found that the work which the plaintiff was performing was not such that changed the conditions of the place where he was engaged in work so as to make it more or less dangerous from time to time as the work was performed. Plaintiff's damages were fixed at $2,000 and the trial court entered judgment for that amount on the verdict. The defendant has appealed.

### Opinion.

We will refer to the parties as plaintiff and defendant.

The defendant insists that its motion for instructed verdict should have been given because the plaintiff was engaged in repair and construction work, the very purpose of his employment being the removal of the dangerous conditions which caused his injury. The principle of law contended for by the defendant is well established. Our courts have denied recovery for injuries received by an inspector or repair man who was injured through defective machinery which he was employed to inspect for defects or to repair. Lowrey v. Fitzhugh, Tex.Civ.App., 153 S.W. 1190; Kansas City Railway Co. v. Wood, Tex. Civ.App., 262 S.W. 520. Likewise, recovery has been denied where the injury to the servant was brought about through dangerous conditions produced by the very work in which he was engaged and which conditions constantly changed as the work progressed so that it was impossible for the master to maintain safe working conditions. Producers' Oil Co. v. Bush, Tex.Civ.App., 155 S.W. 1032; Armour & Co. v. Dumas, 43 Tex.Civ.App. 36, 95 S.W. 710; Hailey v. Missouri Ry. Co., Tex.Civ.App., 70 S. W.2d 249, writ refused. The holding in such cases is grounded upon the principle that it would be impossible for the master to furnish perfect machines to inspect or repair, or a safe place in which to perform the duty of making safe a dangerous place. And as respects the servant's cause of action, it may be said that the rule which denies his claim for damages in such cases

stems out of the doctrine of assumed risk. Under such circumstances the servant necessarly knows of the dangers reasonably inherent in his undertaking and so assumes the risk of injury therefrom when he enters upon the employment.

But such is not the case before us. Here the servant Powers was not employed in repairing the old, defective and dangerous electric line. He was employed as a common laborer to assist in placing the poles for a new line. There was nothing in the work he was employed to do which required him to have anything to do with the old line. At most, he knew merely that he would have to work in close proximity to it. He was an inexperienced farm laborer, having nothing more than the most superficial conception of the dangers incident to working around high tension electric lines. Whether he knew of the dangers incident to his employment and so assumed the risk of injury, was a fact issue for the jury. The issue was appropriately submitted to the jury and found in the plaintiff's favor.

It is not necessary for us to decide whether under the facts of this case the fellow-servant doctrine had any application. That issue was likewise correctly submitted to the jury and determined in the plaintiff's favor.

Complaint is made that the jury discussed the matter of insurance and attorney's fees. Upon presentation of the motion for rehearing three jurors were placed on the witness stand by defendant. Their testimony amounted to no more than a showing that after the verdict had been arrived at, and the jury had signaled for the sheriff to come and conduct them to the court room, some juror mentioned that the lawyers would probably get half of the amount of damages awarded. There was also a reference by a juror that the city of Timpson probably carried insurance. However, the foreman of the jury immediately spoke up, suggesting that such matters were no concern of the jury. The juror witnesses all testified that the matter of attorney's fees and insurance in no wise influenced in any way their verdict. Occurring when it did, and under the circumstances reflected by the testimony of all the witnesses offered by the defendant, no injury resulted to the defendant.

Complaint is also made of certain alleged improper arguments of counsel for plaintiff. We are inclined to the view that the argument was legitimate. As shown by the qualification which the trial judge attached to the bill of exception, it was made in response to a preceding argument of defendant's counsel and by way of reply.

The amount of damages assessed, $2,000, is challenged as excessive. The medical testimony was conflicting as to whether the plaintiff's condition was due to the injury which he received. But if, as testified by the plaintiff's medical witness, it was due to his injury, we think there can be no question that the amount of damages assessed was not excessive.

The judgment of the trial court is in all things affirmed.