Cephas E. SWORD and Houston Fire and
Casualty Insurance Company, In-
tervener, Appellants,

v.

GULF OIL CORPORATION, Appellee.

No. 16357.

United States Court of Appeals
Fifth Circuit.

Jan. 24, 1958.

Rehearing Denied April 17, 1958.

830

John J. Watts, W. O. Shafer, Odessa, Tex., for appellants.

William L. Kerr, Turpin, Kerr & Smith, Midland, Tex., of counsel, for appellee.

Before HUTCHESON, Chief Judge, and RIVES and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

The question presented is whether, under the evidence, a jury could properly hold the employer of an independent contractor liable for injury to one of that contractor's employees. The injury was caused by the absence of a guard over a rapidly revolving clutch into which the left foot and leg of the employee were sucked and so badly mangled that amputation was necessary. Specifically, the question is whether there was sufficient evidence to sustain a finding that the employer of the independent contractor owed to the contractor's employee a duty of inspection and control, which would have resulted in the discovery and repair of the defect, or in warning the employee of the absence of the guard.

Gulf was the owner of an oil and gas lease covering "flat ranch land." It contracted with Hall & Stewart Drilling Company for the drilling of an exploratory well. The contract was on a printed

form, some of the pertinent provisions of which are quoted in the margin.[1]

The contractor furnished the workmen, derrick, engines, motors and machinery.

The well had been drilled to a depth of more than 13,000 feet. Sword was a member of a five-man crew working for the drilling contractor. In searching for

1. "This contract made and entered into on this *9th* day of *January, 1952,* between Gulf *Oil Corporation* * * *, hereinafter called 'Gulf', and *Hall & Stewart Drilling Company* * * * hereinafter called 'Contractor.'

"Witnesseth:

"1. Location of Well:

"Gulf is in possession and control of a certain tract of land situated in *Upton County, Texas* * * * upon which it desires Contractor to drill a well for oil or gas, * * *.

    *        *        *        *        *

"8. Safety Precautions:

"Contractor agrees to do all things possible to control and prevent blowouts.

"Contractor agrees to inspect all material furnished by Gulf before using same and to notify Gulf of any defects therein.

"Contractor shall maintain well control equipment in good condition at all times; shall test the blowout preventers at least once each tour by closing the rams; and shall test the master gate valve by closing same each time the drill pipe is pulled.

"Gulf shall have the right to specify to Contractor the design of the surface mud system and control equipment, which are to be approximately as shown on drawing attached to and made a part of Exhibit 'A'. At any and all times during the drilling of this well, the drilling fluid must be of a type and of characteristics acceptable to Gulf, and Gulf shall have the right to make any tests of the drilling fluid which it deems necessary. Drilling with water may, at certain predetermined depth intervals, be acceptable to Gulf; however, it is specifically understood that when and if Contractor elects to so drill, Contractor shall be responsible for any trouble or damage resulting therefrom. In the event the water so used is furnished by Gulf, Gulf shall have the right to require Contractor to discontinue drilling with water and to drill with a low-water-loss mud should Gulf's water supply prove inadequate.

"Contractor shall measure the total length of drill pipe in service, with a steel tape, at approximately each 1,000-foot depth interval and shall also take measurements just before setting casing or liner, and at point where day rate begins, and after reaching final depth.

"Contractor shall provide and have available at all times for use by Contractor's employees engaged in the performance of the work herein undertaken, all safety appliances needed for the maximum protection of Contractor's employee's [sic] against injuries.

"With respect to any work to be performed hereunder, which is to be paid for at day rates, Gulf shall have the right to specify to Contractor the general technique to be employed by Contractor in the performance of all such work; but the actual performance and superintendence of the details of such work shall be by Contractor. While Contractor is operating on day rate basis in the performance of this contract, he shall not be responsible for loss or damage to Gulf's property on the location, nor for loss or damage to any tubular or other equipment ordinarily used below the surface, unless such loss or damage shall be caused by the negligence of the Contractor. Gulf will reimburse Contractor at a reasonable value for Contractor's equipment lost in the hole when not occasioned by the negligence of the Contractor.

    *        *        *        *        *

"19. Independent Contractor Relationship:

"In the performance of the work herein contemplated Contractor is an independent contractor, with the authority to control and direct the performance of the details of the work, Gulf being interested only in the results obtained. But the work contemplated herein shall meet the approval of Gulf and be subject to the general right of inspection herein provided to Gulf to secure the satisfactory completion thereof. * * *.

"Gulf Representatives' Status:

"The actual performance and superintendence of all work hereunder shall be by Contractor, but Gulf shall be privileged to designate a representative or representatives, who shall at all times have access to the premises for the purpose of observing tests or inspecting the work performed by Contractor, and who shall have the right of determining whether such work is being performed by Contractor in accordance with the provisions of this contract. Such representative, or representatives, shall be empowered to act for Gulf in all matters relating to Contractor's performance of the work herein undertaken. * * *."

air leaks which had caused a pressure failure, Sword started over the master clutch, his left foot slipped and was sucked into the clutch with the resultant injury.

The master clutch was enclosed on all sides but one. The open side was not easily visible, being only about a foot away from the compound chain guard. Sword's testimony and that of his witnesses went to show that it was customary to have a guard over the open side of the master clutch, made of "a heavy gauge wire mesh so that the air can get to the clutch and it will serve as a guard for a hand or foot to keep out of there." It was undisputed that such a guard would have prevented Sword's injury.

Sword was an experienced roughneck who had been working at this well for about a month. He had not been warned, and did not know that the guard was missing. A very careful inspection was necessary to discover the defect. Mr. King, the driller member of the crew, testified that "I hadn't been working on that rig but about I believe about two months. * * * And, as far as I know, that guard was never on there from the time I went to work on it." King's attention had been called to the absence of the guard by another, but less serious, accident.

"Well, one of the roughnecks on the crew dropped a wrench on this clutch, and it broke off an air connection in there. We had to shut the rig down and repair this clutch, and I helped make the repairs on it."

King further testified that he reported that matter to his "tool pusher," Underwood, and that it was included in a written drilling report signed by H. E. Ingle, Gulf's Area Drilling Foreman.

Mr. Ingle was the only representative of Gulf "assigned to that well to do any work about it in this stage of the operations where he received his injuries." He had never made any inspection of the

master clutch or of the condition of any of the equipment or tools being used by the contractor. He admitted having signed a drilling report on July 3, 1952, about two and one-third months before the accident, containing the statement that the crew of which Mr. King was driller had to repair the master clutch air line,[2] but explained, "It says that on the report, but it was of no concern of mine." On cross-examination, Mr. Ingle testified in part:

"Q. Yes. Now, during your twenty-three years with the Gulf, they have been letting drilling contracts and having you on the job for them as company representative how long? A. Nine years.

"Q. Nine years? A. Yes.

"Q. And they never have changed the rules any with reference to their instructions to you, have they? A. No, sir.

"Q. Mr. Raymond Knox, that's out there in the witness room, he occupied the position down there in Crane County as drilling foreman on the job before you ever went down there, didn't he, for the Gulf? A. Yes, sir.

"Q. And you know that all during the time that the Gulf has given instructions to company foremen to inspect equipment on jobs such as this, including the master clutch and other conditions in order to see if the place that those men are working on Gulf oil wells are safe, don't you? * * * A. I have never been instructed to inspect any equipment of the contractors by the Gulf Oil Corporation.

"Q. And you have been instructed as a drilling foreman for the Gulf during those years that if there is any dangerous condition, such as this thing would be, to order the contractor to repair it, haven't you? A. I said I never have been in-

2. So far as we can discern, the drilling report did not inform Ingle or Gulf of a

continued absence of a guard over the open side of the master clutch.

structed to inspect any equipment hired by the contractor nor to order any of it to be repaired."

In rebuttal the plaintiff introduced Raymond Knox, who testified that he left Gulf's employment as its drilling foreman in 1951, and further:

"Q. Mr. Knox, during the years that you were a drilling foreman acting as a company representative for the defendant in this case, Gulf Oil Corporation, on jobs wherein they had drilling contractors carrying on the work, did the Gulf give you instructions to inspect the equipment on those rigs, and in the event any unsafe condition was found and objections such as the master clutch being without a guard, to order the drilling contractor to make the necessary changes? A. They did."

The district court denied Gulf's motion for a directed verdict. After hours of deliberation, the jury reported that they were in hopeless deadlock, and were then discharged. Thereafter, Gulf moved for judgment notwithstanding the verdict and also for summary judgment, and the court granted both motions and entered judgment for the defendant.[3]

Appellants do not argue that Gulf is vicariously liable for the tort of its independent contractor. Their position is that it was a question for the jury, under the facts and circumstances of the case, as to whether Gulf itself owed a duty of inspection which would have disclosed the absence of the guard over the clutch.

As has been noted, footnote 1, *supra,* the contract provided that in the performance of the work the contractor was an independent contractor with the authority to control and direct the performance of the details of the work, and that Gulf was interested only in the re-

sults obtained. The contract continued: "But the work contemplated herein shall meet the approval of Gulf and be subject to the general right of inspection herein provided to Gulf to secure the satisfactory completion thereof." That degree of right of supervision and control was clearly reserved for the benefit of Gulf itself, in its legitimate concern for the protection of its investment and properties and the satisfactory completion of the well. It was desirable also for the protection of other persons who might come on the premises at Gulf's invitation before the completion of the drilling; such as employees of companies specializing in drill stem testing, cementing, perforating well casing, casing testing, coring, acidizing, and other well services. That degree of right of supervision and control was not inconsistent with the relationship between Gulf and its independent drilling contractor as such, and did not impose on Gulf any direct duty to the employees of its independent contractor, in the absence of actual control of the operations by Gulf or its employees.

The evidence was without dispute that no Gulf employee was present at the time of the accident; that Sword "hadn't seen a Gulf man in several days before the time you got hurt," and that Sword was not working under the supervision or direction of any Gulf employee. There was no actual control by Gulf that had any relation to Sword's injury.

If Gulf had retained authoritative, not merely supervisory, right of control over the well-drilling contractor as to means and manner of performing the work as well as ultimate results, then Sword would be an employee of Gulf within the Texas Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq.;[4] and Sword has, of course, al-

3. The appellants do not complain of the court's failure to reserve its decision on the motion for directed verdict as suggested in Rule 50(b), Federal Rules of Civil Procedure, 28 U.S.C.A. See Slocum v. New York Life Ins. Co., 1913, 228 U.S. 364, 381, 33 S.Ct. 523, 57 L.Ed.

879, commented on in 2 Moore's Federal Practice, 2nd ed., Paragraph 2.04, pp. 326, 327, and 5 Id., Paragraphs 50.01(8), 50 07, and 50.10.

4. Standard Ins. Co. v. McKee, 1947, 146 Tex. 183, 205 S.W.2d 362, 363, 364.

ready been paid compensation by the intervener appellant. Able counsel for the appellants do not claim such a degree of control or a right thereof as would constitute Sword an employee of Gulf, but insist that the lesser degree of control reserved did impose on Gulf a duty to Sword within the principle stated in the Restatement of Torts, § 414, quoted with the comment thereto in the margin.[5]

· Appellant relies especially upon the many Texas cases cited in the opinion by Judge Brown in Gulf Oil Corporation v. Wright, 5 Cir., 1956, 236 F.2d 46, and supporting the principle stated at page 52:

, " * * * The relationship under Texas law between an occupier of land and his invitees (including employees of an independent contractor) and between a general contrac-

tor and employees of subcontractors is the same, Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99; Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R. 2d 853, and gives rise to a like duty, 'Accepting * * * the status of the plaintiff * * * as that of business invitee, the defendant owed him a duty to use reasonable care to make and keep the premises reasonably safe for his use * * *', Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60, 62; Hall v. Medical Building of Houston, 151 Tex. 425, 251 S.W.2d 497; Smith v. Henger, supra; Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609; Weingarten, Inc., v. Brockman, 134 Tex. 451, 135 S.W.2d 698; McKee v. Patterson, 153 Tex. 517, 271 S.W. 2d 391, 393 * * *."[6]

5. "§ 414. Negligence in Exercising Control Retained by Employer.

"One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for bodily harm to others, for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

"Comment:

"a. If the employer of an independent contractor retains control over the operative detail of doing any part of the work, he is subject to liability for the negligence of the employees of the contractor engaged therein, under the rules of that part of the Law of Agency which deals with the relation of master and servant. The employer may, however, retain a control less than that which is necessary to subject him to liability as master. He may retain only the power to direct the order in which the work shall be done or to forbid its being done in a manner likely to be dangerous to himself or others. Such a supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in this Section unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others.

: "b. The rule stated in this Section is usually, though not exclusively, applicable when a principal contractor entrusts

a part of the work to subcontractors but himself or through a foreman superintends the entire job. In such a situation, the principal contractor is subject to liability if he fails to prevent the subcontractors from doing even the details of the work in a way unreasonably dangerous to others, if he knows or by the exercise of reasonable care should know that the subcontractors' work is being so done and has the opportunity to prevent it by exercising the power of control which he has retained in himself. So too, he is subject to liability if he knows or should know that the subcontractors have carelessly done their work in such a way as to create a dangerous condition and fails to exercise reasonable care either to remedy it himself or by the exercise of his control cause the subcontractor to do so." Restatement, Torts, § 414, pp. 1120-22.

6. Insofar as the possession of the land may be concerned, it was stipulated:

" * * * that the Gulf Oil Corporation was the owner of an oil and gas lease when it entered into the contract that was made with Hall & Stewart, and that when it delivered possession of its oil lease to the contractor it delivered to him a flat piece of land, on which the drilling of the well commenced and was carried to the point at which the accident happened."

Of course, the possession delivered to the contractor was not exclusive of Gulf and its employees and invitees.

Particular attention is called to the decisions of the Supreme Court of Texas in Smith v. Henger, 1950, 148 Tex. 456, 226 S.W.2d 425, 430, 431, 20 A.L.R.2d 853; Roosth & Genecov Production Co. v. White, 1953, 152 Tex. 619, 262 S.W. 2d 99, 101; and Robert E. McKee, General Contractor v. Patterson, 1954, 153 Tex. 517, 271 S.W.2d 391, 395.

▪ This opinion would be extended unreasonably, and no useful purpose would be served, by a discussion of the many Texas decisions, or of those from this Court, relied on by the respective parties. It is sufficient to note that none of them goes so far as to hold, or to support a holding, that an employer of an independent contractor owes a duty to the contractor's employees to inspect the machinery furnished by the contractor, in the absence of any actual control of the operation, or of any reserved right of control more than that deemed necessary to secure the satisfactory completion of the work.[7]

▪ As another basis of liability, the appellants urge that the work was inherently dangerous in the absence of special precautions; and that the employer of the independent contractor, charged with so foreseeing, owed a duty of reasonable care for the taking of such precautions. Assuming, without deciding, that this is a case of inherently dangerous work, or that the jury would have been warranted in so holding, the general law seems to be that the employer must, by his contract, impose the duty upon the independent contractor to take the necessary special precautions. Restatement, Torts, § 413(a), p. 1119. As has been seen, footnote 1, *supra*, the contract made it the duty of the contractor to take safety precautions, and specifically to "provide and have available at all times for use by Contractor's employees engaged in the performance of the work herein undertaken, all safety appliances needed for the maximum protection of Contractor's employee's [sic] against injuries."

▪ Appellants urge, however, that the employer's duty, in cases of inherently dangerous work, is nondelegable. As to third persons, that is true,[8] but it has been observed that " * * * the duties which a contractee owes to employees of the independent contractor are less than those owing to third persons." 57 C.J.S. Master and Servant, § 600, p. 372.

The reasons for the rule of nonliability for the torts of an independent contractor have been well stated in 27 Am.Jur., Independent Contractors, § 27, pp. 504, 505, 506:

" * * * This rule of the nonliability of an employer is based upon the theory that the characteristic incident of the relation created by an independent contract is that the employer does not possess the power of controlling the person employed as to the details of the stipulated work, and it is, therefore, a necessary judicial consequence that the employer shall not be answerable for an injury resulting from the manner in which the details of the work are carried out by the independent contractor. The general rule has also been said to rest upon the ground that a contractor, pending the performance of the work, is, to a certain extent, substituted for the person for whom the work is to be performed. However, the real basis for the rule seems to be public policy."

" * * * However, the fact that the contract contains express stipulations for the taking of adequate precautions and that the contractor agrees to assume all liability for harm caused by his failure to do so, does not relieve his employer from the liability stated in this Section." Restatement of Torts at pp. 1128–1129.

7. Otherwise, the "prediction" of which Dean Prosser takes note, that " * * * ultimately the 'general rule' will be that the employer is liable for the negligence of an independent contractor," Prosser on Torts, 2d ed., p. 358, would be close to present reality in Texas.

8. For pertinent example, the comment to Section 416 of the Restatement of Torts contains the following:

**836**

We must look to the Texas courts for statements of the public policy of that State. It was held in Humble Oil & Refining Co. v. Bell, Tex.Civ.App., 180 S.W.2d 970, 975, 976, that the rule that an employer of an independent contractor is liable to third persons for negligence of the independent contractor in the performance of work inherently dangerous does not extend to employees of the independent contractor, and that holding has been twice followed by this Court. Union Tank & Supply Co. v. Kelley, 5 Cir., 1948, 167 F.2d 811, 816; Cagle v. McQueen, 5 Cir., 1952, 200 F.2d 186, 190. Appellants vigorously urge that such is no longer the law of Texas. The same principle was, however, reaffirmed in the very late case of Nance Exploration Co. v. Texas Employers' Ins. Ass'n, Tex.Civ. App.1957, 305 S.W.2d 621, 627, 628. We must conclude that the fact, if it be a fact, that the work was inherently dangerous would not impose liability upon Gulf.

In a supplemental brief, filed after the oral argument, appellants ask that we review certain rulings of the district court on the admissibility of evidence. Those rulings were not included either in the statement of points on which the appellants intended to rely on appeal that were served on the appellee,[9] or in the specifications of error in appellants' original brief.[10] In our opinion, the rulings complained of clearly do not constitute plain error affecting substantial rights and would not require a reversal of the judgment in the interest of justice. We therefore forego reviewing the rulings on admissibility.

We agree with the district court that the evidence in this case would not sustain a finding that Gulf owed any duty to Sword to inspect, and to supervise the operation of, the machinery furnished by Sword's employer. The judgment is therefore

Affirmed.

9. Under Rule 75(d), Federal Rules of Civil Procedure, 28 U.S.C.A.

10. Required by Rule 24, 2(b) of the Fifth Circuit, 28 U.S.C.A.