**TEXACO, INC., Appellant,**

v.

**Dallas G. ROSCOE, Appellee.**

No. 18726.

United States Court of Appeals
Fifth Circuit.
May 17, 1961.

Dale Condron, Charles S. Pipkin, Beaumont, Tex. (Strong, Pipkin, Strong & Nelson, Beaumont, Tex., of counsel, on the brief), for appellant.

John H. Seale, Jasper, Tex. (Barber & Seale, Jasper, Tex., on the brief), for appellee.

Before TUTTLE, Chief Judge, and HUTCHESON and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This cause presents the now familiar problem of the claimed breach of duty owing by an owner of premises to the employee of an independent contractor. The jury returned a verdict for the injured employee. The defendant-owner appeals from the refusal of the District Court to enter a *j. n. o. v.* under F.R. Civ.P. 50(b), 28 U.S.C.A. based on the timely motions for instructed verdict. We reverse.

The Owner was Texaco, Inc. The Independent Contractor was the Fluor Corporation, Ltd. The plaintiff, Roscoe, was an employee of Fluor working as a boiler-maker. He sustained substantial injuries from exposure to acetylene fumes given off by an oxy-acetylene cutting torch then burning in a confined space.

The work was being done within the confines of the Texaco's 300-acre refinery at Port Arthur. Fluor had approximately 400 men of all crafts on the job. The area of work was segregated by a fence on three sides and a roadway on the other. A part of the construction work was the erection and equipping of a catalytic reforming unit and Udex unit. This is frequently called a "tower." The tower is a tall, steel pressure vessel approximately 120 feet in height and 15 feet in diameter. Its bottom end is an inverted dome. Supporting the tower in its upright position was a steel skirt which appeared to be a vertical continuation of the cylinder. The vertical clearance from the cement flooring on the ground to the bottom of the pressure vessel was about five to six feet. On opposite sides of the skirt were two "manways"—sort of limber holes two feet by four feet in size. When the tower is completed, the manways constitute permanent openings to permit access to the space under the bottom of the pressure vessel and for ventilation.

Fluor, for its own convenience, was using this cylindrical space for storage of boiler materials being used in equipping the tower. It installed wooden doors, properly hinged, which permitted the space to be securely closed. We assume that the jury was entitled to find that Fluor knew that the members of the boiler gang used this space as a place in which to change work clothes. Likewise it was charged with knowledge that to overcome the cold of the December temperatures, Fluor's men, to the knowledge of Texaco inspectors, had rigged up an acetylene torch which they customarily lighted to heat up the compartment in order to make it more comfortable.

Roscoe had previously been given the key to the lock on the temporary wooden doorway. As the first member of the gang reporting early on the morning of December 16, he unlocked the door, entered the cylindrical room and lit the torch. Others soon joined him. Approximately 30 minutes later he, and several others, passed out from exposure to acetylene fumes.

The case is a remarkable one in several respects. Nothing Texaco did actually caused the injury. The torch belonged to Fluor. It was lighted by Fluor's men, indeed by the plaintiff himself. The compartment in which the torch was burning was a part of the very construction work being done by Fluor. The decision to close up the compartment by wooden doorways was that of Fluor. The final performance of the contract by Fluor would require that the doorways be removed. The torch, the gas, the compartment, the employees were all those of Fluor. All that the plaintiff is able to urge against Texaco is that it knew, or ought to have known, that the practice was going on, and knowing that, it should have warned Fluor and Fluor's men of the danger. Moreover, the evidence is completely silent on one essential ingredient of these cases—proof that Texaco not only knew that the dangers existed but that it had reason to be-

lieve that neither Fluor nor its employees would be aware of such hazards.

■■ We can find no possible basis upon which to found any liability against Texaco. To the extent that control of the area or the facilities giving rise to the harm is the particular basis upon which a duty rests, Gulf Oil Corp. v. Bivins, 5 Cir., 1960, 276 F.2d 753, at pages 755–756, it is totally lacking here. The tower was the thing which Fluor was hired to erect and equip. Texaco had nothing to do with it until it was completed and accepted. The presence of Texaco's inspectors in the area of Fluor's contract, or in, on, or under the particular tower had but a single, limited purpose under the uncontradicted evidence of this record. These inspectors were there to see to it that Fluor did what it contracted to do. As to that it is clear that, "In the absence of any actual control of the operation, or of any reserved right of control more than that deemed necessary to secure the satisfactory completion of the work, an employer of an independent contractor owes no duty to the contractor's employees to inspect or to supervise the installation or operation of the machinery furnished by the contractor." Hurst v. Gulf Oil Corp., 5 Cir., 1958, 251 F.2d 836, at page 838 certiorari denied 358 U.S. 827, 79 S.Ct. 44, 3 L.Ed. 2d 66; Sword v. Gulf Oil Corp., 5 Cir., 1958, 251 F.2d 829, certiorari denied 358 U.S. 824, 79 S.Ct. 41, 3 L.Ed.2d 65.

■ Testimony of a general, loose nature that Texaco had some safety rules of its own did not overcome the deficiency in proof. The only one identified was the usual no-smoking rule due to the obvious hazards of catastrophic fires from the presence of inflammable, often-times explosive, volatile liquids as well as gases. But accepting this most favorably to the plaintiff, it established nothing more than the practice of Texaco to enforce its own safety rule where the consequence of violation jeopardized its property and its employees. There was nothing under the contract between Texaco and Fluor, in their actual relationship nor the customs and practices regularly followed, which charged Texaco with the duty of warning Fluor's employees against the dangers inherent in the manner in which they went about the performance of their master's work.

■ To the extent that the effort is to rest liability on the duty to warn of danger, it fails for two reasons. In the first place there was a total lack of proof of the two essentials. There was no proof that Texaco knew first, that the practice was dangerous and, second— here more important—that Fluor or its employees would not reasonably know of the danger. The essence of the duty is the presence of a concealed unknown danger. Gulf Oil Corp. v. Wright, 5 Cir., 1956, 236 F.2d 46, at page 52; § 343 Restatement of Torts, adopted as the Texas standard in Smith v. Henger, 1950, 148 Tex. 456, 226 S.W.2d 425, at page 431, 20 A.L.R.2d 853; Gulf Oil Corp. v. Bivins, 5 Cir., 1960, 276 F.2d 753, at pages 756, 761, certiorari denied 364 U.S. 835, 81 S.Ct. 70, 5 L.Ed.2d 61; see Texas L. Rev. 241; 61 Col.L.Rev. 284. In the second place, if there was a danger it was in no sense created by Texaco. It did not inhere in Texaco's property, or any portion of it turned over to Fluor for performance of the work. The danger, whatever it was, and known or unknown as it may have been, was wholly the creature of Fluor's acts, or those for whom Fluor, not Texaco, had legal resonsibility. Nothing about Texaco's property, or the premises, or facilities furnished by it made the danger greater or less. The cylindrical compartment had been closed in by Fluor for its own purposes. Indeed, upon completion it would no longer be a closed compartment. These were dangers arising out of the manner in which Fluor and its employees undertook to do the work. Barring some circumstance by which conditions—for which Texaco was responsible and of which Fluor would not reasonably know—presented a concealed danger, there was no duty on Texaco to police performance of work by Fluor's men to see that they followed safe practices. In the circumstances of this record the

" * * * danger to which * * * [plaintiff] * * * became subjected was a danger which came into being, not from the condition of the premises or the place of work, but from the manner of performance of the job to be done by those who were working together." Moore v. Texas Co., 1956, Tex.Civ.App., 299 S.W.2d 401, at page 403, error refused n. r. e. For, as that case declares the Texas law, the " * * * owner of the premises is under no duty to the employee of an independent contractor to see to it that the work is done safely." 299 S.W.2d 401, at page 403.

Under no conceivable theory was the evidence sufficient, nor is there any indication that on these fundamentals the deficiency can be overcome. A judgment for the defendant ought to have been entered. We therefore reverse and render.

Reversed and rendered.