**EASTMAN KODAK COMPANY,**
Appellant,

v.

**Mrs. Peggy MARTIN et al., Appellees.**

**No. 22085.**

United States Court of Appeals
Fifth Circuit.

June 21, 1966.

Rehearing Denied Sept. 12, 1966.

Herbert Boyland, Longview, Tex., Curtis White, Robert M. Greenberg, Dallas, Tex., for appellant.

Fred Erisman, Longview, Tex., Scott Baldwin, Franklin Jones, Jr., Jones, Jones & Baldwin, Marshall, Tex., for appellees.

Before HUTCHESON, BURGER[*] and WISDOM, Circuit Judges.

HUTCHESON, Circuit Judge:

This action was brought by Mrs. Ronald Martin and her four minor children under the Texas Wrongful Death Act [1] to recover for the death of Ronald Martin, their husband and father. At the time of his death, Martin was employed by an independent contractor engaged in demolition work under contract with, and on the premises of, the defendant Eastman Kodak Company. Upon a jury verdict finding Eastman negligent and assessing damages, the district court entered judgment against Eastman. For the reasons hereafter stated this judgment must be reversed and the cause remanded for trial anew.

On this appeal both legal and procedural errors are presented for our determination. We are all of the opinion that the procedural issues raised require reversal of the district court's judgment. Judges Burger and Wisdom are in agreement that the cause should be remanded for trial anew because they reach a different conclusion from mine on legal issues raised by Eastman. Because I am convinced that Eastman's position on these issues is correct, I shall. state my views thereon in a separate portion of this opinion.

During 1962, Eastman contracted with L. E. Meyers Company for the dismantling of an abandoned portion of a power line located on Eastman's premises in Harrison County, Texas. Meyers specialized in the erection, maintenance, and removal of utility lines. The power line was originally constructed in 1950. The portion to be dismantled was abandoned after Meyers had constructed a replacement for it in 1959 and was not thereafter maintained. Involved in the dismantling were seven poles (designated Poles 1–7.[2] Poles 1 and 4 were permanently guyed when the power line was constructed by guy wires wrapped around a crosstie buried some six feet under ground. This method of guying the poles was somewhat unorthodox. Eastman did not notify Meyers prior to or during the dismantling of the manner in which the guys were constructed, nor did Meyers or its employees actually know of this. Eastman desired to retain for reuse the dismantled poles and wire; otherwise Meyers had complete and exclusive control of the demolition work and the premises on which it was to be done.

In carrying out its task, Meyers and its employees, including Martin, detached the power line from Poles 2, 3, 5, and 6, so that the line extended from Pole 1 to Pole 4 and from Pole 4 to Pole 7. Although the evidence varies widely as to the effects of this, it undoubtedly increased substantially the weight sustained by each of the remaining poles.[3] Meyers expressed concern regarding the condition of the poles to be removed and in fact took precautions against the possibility that the poles were rotted.[4] Martin then climbed Pole 4 to remove the power line from this pole; the line was lifted by a winch truck to provide enough slack in the line to allow its removal. During this operation no precautions were taken to reinforce or support Pole 1 or 4 or their guys. At this time the

---

[*] Of the District of Columbia Circuit, sitting by designation.

1. Tex.Rev.Civ.Stat.Ann. art. 4671 (1952).

2. The seven poles formed an open "V", with Pole 4 at the base. Poles 1–4 formed one side of the "V", while Poles 4–7 formed the other.

3. The evidence viewed most favorably to the appellees indicates that the weight supported by each pole, and its guys, increased by at least fifty percent.

4. In removing the line from Poles 2, 3, 5, and 6, an A-Frame truck was used to support the poles and to prevent their breaking and falling. Temporary guys were installed on Pole 7 to support the increased stress placed on it during the work.

guys supporting Pole 1 broke, Poles 1 and 4 broke, and Pole 4 fell, carrying with it and killing Martin. The Pole 1 guys were found to have corroded under ground and to be severely weakened. Although Eastman was familiar with the construction of the guys, it did not know of their weakened condition; apparently Meyers' employees, including Martin, had not inspected the guys and were unaware of their condition.

Appellees instituted this suit to recover for Martin's death, contending that Eastman owed a duty to provide Martin a safe place to work; that this duty was breached by Eastman's failure to maintain the Pole 1 guys in a proper condition or to warn Martin or Meyers thereof; and that this breach of duty was the proximate cause of Martin's death. Eastman denied that it owed Martin a duty to warn him of, or to protect him from, the weakened guys. It further argues that any duty owed Martin was not breached by the weakened guys; that the guys did not cause the accident; that any dangers involved in the demolition work were incidental thereto or were open and obvious to, and assumed by, Martin; and that the conduct of Meyers and its employees in connection with the work was the sole cause of the accident. The trial judge submitted the case to the jury on a general charge, but specifically instructed the jury with regard to each of the issues raised by Eastman. The jury returned a verdict in favor of appellees and against Eastman, and assessed damages totalling $230,000.

Chief among Eastman's many arguments in this Court is its assertion that it owed no duty, and thus breached no duty, toward Martin. Alternatively, it insists that the district court's judgment should be reversed and the cause remanded for a new trial because of errors committed by the district court in the giving of charges. We are all agreed that, as to some of the charges given, the district court committed reversible error, which necessitates setting aside the court's judgment, and we shall first discuss these matters.

In the trial court Eastman asserted that the sole and exclusive cause of Martin's injuries was the activities of Meyers and its other employees. This of course raised the issue of sole proximate cause.[5] For if in fact Meyers' conduct was the *sole* proximate cause of Martin's injuries, Eastman's conduct could not have been a proximate cause of the injuries, and thus no recovery could be had against it. In its charge to the jury regarding this issue,[6] the trial court did two things: it placed the burden of proving sole proximate cause on the defendant Eastman; and it strongly implied that only if Meyers' conduct was negligent could it constitute the sole proximate cause of Martin's injuries. Eastman took exception to both these actions, and argues here for reversal based thereon.

 Eastman's point is well taken. Under the Texas law the defendant has the burden of introducing the issue of sole proximate cause. Once he has done so, however, and has made out a prima

5. See Comm. on Continuing Legal Education, State Bar of Tex., Personal Injury Litigation in Texas Sec. 10.13(1) (1961); Hodges, Special Issue Submission in Texas Sec. 22 (1959) [hereinafter cited as Hodges]; 40 Tex.Jur.2d Negligence Sec. 53 (1962).

6. The court instructed:
"* * * * *
If you find from a preponderance of the evidence that * * * Meyers Company caused an excessive strain on the poles at the time of and immediately preceding the accident, then you will find for the defendant and against the plaintiff, if you further find from a preponderance of the evidence that such conduct was the sole proximate cause of the accident.
* * * * *
* * * In other words, the only way in which the negligence of L. E. Meyers' employees others than Ronnie Martin could defeat plaintiffs' recovery herein would be * * * that the negligence of L. E. Meyers, through his employees other than Ronnie Martin, was the sole proximate cause of Ronnie Martin's injuries and death. * * *
* * * * *

facie case sufficient to go to the jury, it is incumbent on the plaintiff, as a part of his case, to disprove the facts relied on to show sole proximate cause. The burden of persuasion on this issue, then, although it be to prove the non-existence of alleged facts, is upon the plaintiff, and not the defendant.[7] Furthermore, to constitute "sole proximate cause", the conduct of the third person who it is alleged exclusively brought about the plaintiff's injuries need not be negligent; rather it need only have been conduct, whether negligent or otherwise, which was the *sole* and *only cause* of the complained-of injuries. Thus in determining whether the conduct of the third person was the sole proximate cause, it is plainly improper to require that such conduct be negligent as a prerequisite to an affirmative finding on this issue.[8] The trial court's instructions to the jury on this issue certainly were highly prejudicial to Eastman's chances of success, and call for a reversal of the court's judgment.

The procedural errors thus committed by the district court can be remedied only upon a new trial. Judges Burger and Wisdom are of the belief that the cause should now be remanded to the district court for trial anew. They do not join in my view of the legal issues raised which lead me to the opinion that as a matter of law no recovery can be had against Eastman; because of this I shall detail my views on this.

In my view there is one simple, single question of law[9] before us: did Eastman have a legally recognizable duty to protect Martin from the risks resulting in Martin's death? Stated another way, in order for one to be negligent with respect to another, his conduct must create a legally recognizable risk of harm to the other individually or to a class of persons of which the other is a member. If one's conduct creates a recognizable risk of harm only to a particular class of persons, the fact that it causes harm to a person of a different class to whom the actor owed no duty does not make the actor liable to the injured party.[10]

Appellees observe that it is customary for companies with power lines to adhere to the safety rules of the National Bureau of Standards with respect to the construction and maintenance of such lines, and point out that these rules provide that "Lines permanently abandoned shall be removed or maintained in a safe condition." Appellees argue that one purpose of the above-quoted rule was to protect persons having to go on or about abandoned lines to dismantle them. From this it is concluded that Eastman owed a duty to Meyers and its employees to maintain the abandoned line after its abandonment, including its supporting guys, in such condition that the line could be safely dismantled by them.

Quite obviously this rule requiring maintenance of abandoned lines was intended to protect members of the general

---

7. Luther Transfer & Storage, Inc. v. Walton, 156 Tex. 492, 296 S.W.2d 750 (1957); Hicks v. Brown, 136 Tex. 399, 151 S.W.2d 790 (1941); Kuemmel v. Vradenberg, 239 S.W.2d 869, 875 (Tex.Civ.App.1951, writ ref'd n. r. e.) (dissenting opinion) Dallas Ry. & Terminal Co. v. Tucker, 207 S.W.2d 937 (Tex.Civ.App.1948); Dallas Ry. & Terminal Co. v. Guthrie, infra note 8; Dodd v. Burkett, 160 S.W.2d 1016 (Tex. Civ.App.1942, writ ref'd w. o. m.). See Hodges Sec. 17, p. 45.

8. Plemmons v. Gary, 321 S.W.2d 625 (Tex. Civ.App.1959); Kuemmel v. Vradenberg, 239 S.W.2d 869, 875 (Tex.Civ.App.1951, writ ref'd n. r. e.) (dissenting opinion); Gulf, C. & S. R. Ry. v. Jones, 221 S.W.2d 1010 (Tex.Civ.App.1949, writ ref'd n. r.

e.); Dallas Ry. & Terminal Co. v. Guthrie, 206 S.W.2d 638 (Tex.Civ.App.1947), rev'd on other grounds, 146 Tex. 585, 210 S.W.2d 550 (Tex.1948); Fort Worth & D. C. Ry. v. Bozeman, 135 S.W.2d 275 (Tex.Civ.App.1940, writ dism'd jdgmt. cor.); Holland v. DeLeon, 118 S.W.2d 489 (Tex.Civ.App.1938, writ ref'd). See Hodges Sec. 22, p. 60.

9. See Prosser, The Law of Torts Sec. 39 (2d ed. 1955) [hereinafter cited as Prosser]; Restatement (Second), Torts Sec. 328B (1965) [hereinafter cited as Restatement]; 40 Tex.Jur.2d Negligence Sec. 158 (1962).

10. See Prosser Sec. 36; Restatement Sec. 281, comment c.

public from the dangers existing when such lines are not immediately removed. But Meyers, and its employee, Martin, were not members of the general public, who had wandered, or been permitted, or invited, on the premises where the line was located. Rather Meyers and Martin came upon the premises with but one objective: removal of the abandoned line, and thus removal of the dangers inherent therein and posed by its continued existence. The rule invoked by appelles was not intended to, and does not, protect those going on the line to repair or dismantle it *from the very dangers which they were employed to remove.* I am persuaded that Meyers and its employees, including Martin, are not within the class of persons protected by, and to whom Eastman may have owed a duty because of, the above-quoted rule.

Appellees also rely on the oft-stated proposition that the owner or occupier of land is required to exercise reasonable care to warn an invitee, including an independent contractor and his employees, or to make the premises safe for him, as to dangerous conditions or activities of which the possessor knows, or those which he could, and should, discover with reasonable care.[11] Appellees' reliance is misplaced. Again it must be emphasized: the injury sustained by Martin resulted from dangers inherent in, and incidental to, the very work for which he was employed. The courts of Texas,[12] as well as this Court,[13] have repeatedly held that the possessor of land owes no duty to protect an independent contractor or his employees from dangers arising from the performance of the work which the contractor was employed to do. This is but another such case; and I am convinced that Eastman owed no duty to protect Martin from the dangers resulting in his death, and thus breached no duty toward him.

It is undisputed: (1) that Eastman employed Meyers, an expert in such work, to remove the abandoned line under an independent contract; (2) that Eastman retained no control over the premises, or the demolition work, or the safety precautions to be taken in con-

11. See Texaco, Inc. v. Roscoe, 290 F.2d 389 (5th Cir. 1961); Gulf Oil Corp. v. Bivins, 276 F.2d 753 (5th Cir. 1960), cert. denied, 364 U.S. 835, 81 S.Ct. 70, 5 L.Ed. 2d 61 (1960); Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.1963); Robert E. McKee Gen. Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391 (1954); Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60 (1953); Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R.2d 853 (1950); Walgreen-Texas Co. v. Shivers, 137 Tex. 493, 154 S.W.2d 625 (1941); Tyler v. McDaniel, 386 S.W.2d 552 (Tex.Civ.App. 1965, writ ref'd n. r. e.); Humble Oil & Ref. Co. v. Bell, 180 S.W.2d 970 (Tex.Civ. App.1943, writ ref'd). See also 57 C.J.S. Master and Servant §§ 606, 607 (1948); Prosser Sec. 78; Restatement Sec. 343; 30 Tex.Jur.2d Independent Contractors Sec. 19 (1962).

12. The Texas courts have determined nonliability in greatly similar fact situations on differing theories: some cases are decided on the basis of no duty; some on the basis of voluntary encountering of risk; and some on the basis of contributory negligence. The following cases involve one or more of these theories; all stand for the proposition that the land owner or occupier is not liable. Perez v. Hernandez, 317 S.W.2d 81 (Tex.Civ. App.1958, writ ref'd n. r. e.); Nance Exploration Co. v. Texas Employers' Ins. Ass'n, 305 S.W.2d 621 (Tex.Civ.App. 1957, writ ref'd n. r. e.), cert. denied, 358 U.S. 908, 79 S.Ct. 235, 3 L.Ed.2d 229 (1958); Moore v. Texas Co., 299 S.W. 2d 401 (Tex.Civ.App.1956, writ ref'd n. r. e.); Humble Oil & Ref. Co. v. Bell, supra note 11; City of Timpson v. Powers, 119 S.W.2d 145 (Tex.Civ.App.1938); Houston Textile Mills v. Montgomery, 83 S.W.2d 754 (Tex.Civ.App.1935, writ ref'd); Hailey v. Missouri, K. & T. R.R., 70 S.W.2d 249 (Tex.Civ.App.1934, writ ref'd).

13. Texaco v. Roscoe, 290 F.2d 389 (5th Cir. 1961); Gulf Oil Corp. v. Wright, 236 F.2d 46, 55 (5th Cir. 1956) (concurring opinion); Thompson v. Rowan Drilling. Co., 197 F.2d 32 (5th Cir. 1952); Union Tank & Supply Co. v. Kelley, 167 F.2d 811 (5th Cir. 1948), cert. denied, 335 U.S. 827, 69 S.Ct. 54, 93 L.Ed. 381 (1948); Kuptz v. Ralph Sollitt & Sons Constr. Co., 88 F.2d 532 (5th Cir. 1937), cert. denied, 302 U.S. 696, 58 S.Ct. 14, 82 L.Ed. 537 (1937).

nection therewith; (3) that the method whereby Meyers dismantled the abandoned line substantially increased the weight sustained by the remaining poles in the system, and thus substantially modified the system as a whole; (4) that Meyers in fact was concerned about, and took some precautions against, defects and dangers in the line; and (5) that Meyers could have prevented the accident by supporting and reinforcing the pole (Pole 4) on which Martin was working.

It is thus apparent that the injury sustained by Martin resulted not from the conduct of Eastman, or from control exercised by Eastman, over Meyers and the work to be done but rather from the manner of performance of the job to be done by those supposedly expert in, and employed to do, such work, i. e., Martin and the other Meyers employees. Under the Texas law, the possessor of the premises is under no duty to the employees of an independent contractor to see to it that the work is done safely.[14]

Of course I realize that if Meyers had been a "third person" not associated with and involved in the work of the independent contractor Meyers, and had he been injured by Meyers' work in carrying out a particularly dangerous project, then conceivably Eastman would be duty-bound to protect Martin from Meyers' negligence.[15] But the cases are legion declaring that an employee of an independent contractor is not a "third person" within this rule.[16]

When all is said and done, the case remains one in which an employee of an independent contractor hired to carry out demolition work is injured by dangers inherent in and incidental to his work, and seeks to recover for the injuries from the owner of the premises on which the work was done. The matter standing thus, there is no basis, nor can there be, for finding that Eastman owed any duty to protect Martin from the dangers resulting in his injuries, and none for a judgment against it. I would, therefore, reverse and render judgment for Eastman.

Of the clear opinion that the judgment should be reversed and rendered, I nevertheless concur with my associates in a judgment of reversal and remand.

Reversed and remanded.

---

14. E. g., Texaco, Inc. v. Roscoe, supra note 13; Union Tank & Supply Co. v. Kelley, supra note 13; Shell Oil Co. v. Reinhart, 371 S.W.2d 722 (Tex.Civ.App.1963, writ ref'd n. r. e.); Moore v. Texas Co., 299 S.W.2d 401 (Tex.Civ.App.1956, writ ref'd n. r. e.).

15. See Prosser Sec. 64; Restatement Sec. 413.

16. E. g., Sword, Houston Fire & Cas. Ins. Co. v. Gulf Oil Corp., 251 F.2d 829 (5th Cir. 1958), cert. denied, 358 U.S. 824, 79 S.Ct. 41, 3 L.Ed.2d 65 (1958); Union Tank & Supply Co. v. Kelley, 167 F.2d 811 (5th Cir. 1948), cert. denied, 335 U.S. 827, 69 S.Ct. 54 (1948); Holt v. Texas-N.M. Pipeline Co., 145 F.2d 862 (5th Cir. 1944), cert. denied, 325 U.S. 879, 65 S.Ct. 1570, 89 L.Ed. 1996 (1945); Perez v. Hernandez, 317 S.W.2d 81 (Tex. Civ.App.1958, writ ref'd n. r. e.); Nance Exploration Co. v. Texas Employers' Ins. Ass'n, 305 S.W.2d 621 (Tex.Civ.App. 1957, writ ref'd n. r. e.).