**James WISE, Appellant,**

v.

**TEXAS EMPLOYERS INSURANCE ASSOCIATION, Appellee.**

No. 14768.

Court of Civil Appeals of Texas.

Houston.

April 14, 1966.

Rehearing Denied May 5, 1966.

Cattanach, Capps, Turner, Coe, Reardon, Chaney & Thorne, John R. Coe, Houston, for appellant.

Fulbright, Crooker, Freeman, Bates & Jaworski, Jim M. Perdue, Houston, for appellee.

COLEMAN, Justice.

This is a workmen's compensation case wherein the trial court instructed a verdict for the defendant. The principal issue to be discussed is whether appellant was an employee of Houston Terminal Warehouse & Cold Storage Company.

Appellant was the only witness to testify in this case. He was employed by the driver of a truck loaded with frozen shrimp to assist him in unloading. The truck driver agreed to pay him $4.00 or $5.00 for the job. He accompanied the driver in the truck to the warehouse of Houston Terminal Warehouse & Cold Storage Company. Mr. Abron, an employee of the Warehouse, met

them. He told them to put ten cases of the shrimp on each dolly. As appellant removed the loaded dolly from the truck to the warehouse platform, Abron showed him where to place it. On cross-examination he testified as follows:

Q (Mr. Perdue) Are you telling this jury, James, that over at the warehouse every time you brought out a load the receiving man was there and told you right where to put it? Is that what you are telling these folks?

A Yes, sir. He did.

Q Every load you brought out he showed you where to put it?

A Mr. Abron would come and show us where he wanted it put at. That is correct.

Q When you brought this out on the four wheeel dolly, did you bring the shrimp to another dolly and stack it there? Is that the way it worked?

A Yes, sir, because they were carrying it up to the cold storage.

Q Now listen carefully, James. Is it possible that the way you all were doing that that you were taking empty dollies up there in the van and loading them down with shrimp and pulled it down out of the truck and leave the dolly there, you had to go get another empty dolly and take it into the truck?

A Yes, sir.

Q That is the way it was done?

A Yes, sir. That's right. He would show us where to park the loaded dolly.

Q He would show you where to park the dolly?

A Yes, sir.

Q The truth of the matter is he showed you where to park the dolly each time, the same place?

A Yes, sir, because he had to check it.

Q All he was doing was checking it as you pulled it out of the truck?

A Yes, sir.

Q He wasn't showing you where to park it at, he just wanted to check to be sure you had it?

A No, sir. He was showing us where he wanted it.

Q To check it, wasn't that what it was?

A To put it in line so he could check it.

Q To put it in line and that is all he told you to do, isn't it?

A He was the receiving man.

Q And told you to put ten cases on the dolly, don't put any more than ten? Is that right?

A We were working under his orders.

Q You are sure ten is all he told you to put on there?

A Until he overloaded me. Don't put but ten on, he said.

Q They weighted *ten* (sic) pounds apiece?

A That's right.

Q That would be five hundred pounds on each load?

A That's right.

Q That is the only thing that the receiving clerk told you out there, isn't it? Those two things, don't put any more than ten on each dolly and as it comes out of the truck stop it here so I can check it?

A That's right.

Q That is all he did?

A Then showed us where to drive it on, you know, push it on, and leave it, and then said, get another load.

Q I am not sure I understand. Do you mean he would check it and say pull it back up a little ways, something like that?

A Sometimes he would say pull it further back in the warehouse.

Q Didn't they have people working at the warehouse coming down getting these dollies?

A Transferring it upon on the elevator to the cold storage.

Q Taking it up to the freezer?

A That's right.

Finally he was instructed to put more than ten cases on a dolly. As he was pulling the dolly from the van down an inclined ramp to the warehouse platform, and the driver was pushing, the dolly got out of control. It ran over appellant's foot and pinned him against a large pillar which supported the roof of the warehouse, causing disabling injuries. He was unable to continue work, and testified that Abron told him that he should see a doctor, and that the truck driver said that he didn't know any doctors here (the trucking company was based in San Antonio, Texas). He sat down until the unloading was completed and saw the driver go into the office and get something from Abron. When he came out he had four one dollar bills in his hand and gave it to him. The truck driver had told him on the ride to the warehouse that he didn't have any money, but that he would see that he got his money.

Appellant contends that the evidence above summarized brings him within the definition of "employee" found in Article 8309, Sec. 1, Vernon's Ann.Civ.St.: "An employee is a person in the service of another under any contract of hire, express or implied, oral or written, * * * "

■ Since an instructed verdict was granted, we must treat as true the evidence favorable to the claimant, and indulge all reasonable inferences therefrom in his fa-vor. Fowler v. Texas Employers Insurance Association, Tex.Civ.App., 237 S.W.2d 373, writ ref. Since all of the testimony was that of appellant, we accept his final version in case of inconsistency.

■ An employee in the general employment of one employer may be temporarily loaned to another so as to become a special employee of the second employer. Mercury Life and Health Company v. De Leon, Tex.Civ.App., 314 S.W.2d 402, error ref., n. r. e.

In case of an accident to the employee under these circumstances, that employer is to be held responsible in whom the right of control was lodged at the time of the accident, that is the right to direct not merely the end to be accomplished but also the means and details of its accomplishment. Security Union Insurance Company v. Mc-Leod, Tex.Com.App., 1931, 36 S.W.2d 449; Standard Accident Insurance Company v. Arnold, Tex.Civ.App., 1927, 1 S.W.2d 434.

Serious consideration must be given to the consequences of a holding that the employees of a trucking concern delivering wares and merchandise to another become loaned employees of that person merely because the person receiving the goods gives directions to the employees unloading the truck to facilitate his checking the quality and quantity of the goods delivered. While an inference that the driver got the money to pay his helper from the warehouse employee may be drawn from the evidence, this has little, if any, significance. Appellant knew that he was working for the truck driver and knew that the driver was not employed by the warehouse company, and he was looking to the driver for his pay.

In a case where the question was whether the injured man was an employee or an independent contractor (Industrial Indemnity Exchange v. Southard, 138 Tex. 531, 160 S.W.2d 905), the Supreme Court of Texas said:

"Under the undisputed facts, it is quite obvious that it was necessary for the Lum-

ber Company to exercise some supervision over the loading and unloading of the trucks, if the hauling of the logs was to be done efficiently and expeditiously. If this had not been done, much danger and confusion would have been the inevitable result. * * * The courts of this State have repeatedly held that an employer has the right to exercise such control over an independent contractor as is necessary to secure the performance of the contract according to its terms, in order to accomplish the results contemplated by the parties in making the contract, without thereby creating such contractor an employee of such company."

In Mercury Life and Health Company v. De Leon, Tex.Civ.App., 1958, 314 S.W. 2d 402, writ ref., n. r. e., the court said:

"An employee in the general employment of one employer may be temporarily loaned to another so as to become a special employee of the second employer. It is held, however, that even though an employee may be subject to the direction of a temporary master no new relationship of employment is created, if, in following the directions of the temporary master, he is doing so merely in obedience to the direction of and in the performance of his duty to his employer."

Comment b of Section 227 of the Restatement of Agency 2d reads:

"In the absence of evidence to the contrary, there is an inference that the actor remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by the general employer. There is no inference that because the general employer has permitted the division of control, he has surrendered it."

When appellant was injured the work he was doing was within the normal scope of the business of the trucking concern. He was subject to the control of the truck driver, who hired him, had the right to fire him, and paid him for the work he did. There is no material issue of fact raised by the evidence and the directed verdict was proper. Hilgenberg v. Elam, 1946, 145 Tex. 437, 198 S.W.2d 94; Denton v. Yazoo & M. Valley R. Co., 284 U.S. 305; Manning v. Texas Employers Ins. Ass'n, Tex.Civ.App., 1933, 67 S.W.2d 389; Texas Employer's Ins. Ass'n v. Neely, Tex.Civ.App., 1945, 189 S.W.2d 626.

The motion for a directed verdict was dictated to the court reporter at the conclusion of plaintiff's case. The statement of facts reflects that there was a short argument by counsel before the court sustained the motion, but does not contain an objection to the motion on the ground that it was not in writing. Rule 268, Texas Rules of Civil Procedure, requires such a motion to state the grounds thereof, but does not require that it be in writing. This Court is without authority to add additional requirements to the rule. Since the motion appears in the statement of facts and it states the grounds therefor, no harm could have resulted from the fact that the motion was not presented in writing.

The judgment of the trial court is affirmed.