J. A. ROBINSON SONS, INC., et al.,
Appellants,

v.

Mary Francis ELLIS et al., Appellees.

No. 7643.

Court of Civil Appeals of Texas.

Amarillo.

Jan. 30, 1967.

Rehearing Denied March 13, 1967.

R. A. Wilson, Underwood, Wilson, Sutton, Heare & Berry, Amarillo, Logan Ford, Burford, Ryburn & Ford, Dallas; L. A. White, Culton, Morgan, Britain & White, Amarillo, for appellants.

Splawn & Maner, Lubbock, John H. Splawn, Jr., Lubbock, of counsel, for appellees.

DENTON, Chief Justice.

This opinion is submitted in lieu of our opinion announced November 21, 1966.

Mary Francis Ellis and her three minor children brought this suit against J. A. Robinson Sons, Inc. and Bowden Construction Company, Inc., for the wrongful death of Joseph Henry Ellis, their husband and father. respectively. Ellis' death occurred on September 21, 1964, when a cable broke causing the "tail chain" attached to the

cable to strike Ellis while employees of Robinson and Bowden were moving an 80-ton compressor unit from a "low-boy" truck. U. S. Fidelity & Guaranty Co., the workmen's compensation carrier for El Paso Natural Gas Co., intervened to recover the amount paid to Ellis' survivors. A jury verdict was returned for the plaintiffs against the two defendants jointly and severally. Judgment, based upon the jury verdict, was entered for Mrs. Ellis for $80,-000.00 and $40,000.00 for each of the three minor children plus a stipulated amount of $1633.63 for necessary funeral and cemetery costs. Both defendants have appealed and have filed separate briefs.

The evidence concerning the events surrounding the incident set out in over 600 pages of statement of facts are largely undisputed. However, several material and important facts concerning the death are strongly contested. Bowden Construction Company contracted with El Paso Natural Gas Company to erect a compressor station near Bushland, Randall County, Texas. As part of the job, an 80-ton motor and compressor unit was to be set into place on the foundation of the structure. Bowden, the general contractor, hired J. A. Robinson Sons, Inc., a trucking company to move the compressor from a railway flatcar; transport it to the building site and set it upon its foundation in the building under construction. Robinson used three large trucks and a "low-boy" described as a tandem truck with a flat bed upon which the compressor unit was moved. This equipment was operated by three truck drivers and three "swampers" or helpers. Don Edler, a foreman for Robinson, was in charge of that crew. They removed the compressor from the railway car onto the "low-boy" and then transported it some 4½ miles to the construction site. Three employees of Bowden were at the rail site and assisted in the work there. As one Robinson employee stated, "We were working together". This same arrangement continued after the unit was removed to the construction site and operations were begun to remove the com-

pressor from the "low-boy" onto its permanent foundation. Roy Stone, Bowden's superintendent, was present at both the rail site and construction site but did not take an active part in supervising the moving operation. The "low-boy" was spotted on the southeast side of the uncompleted building, facing north. Two of Robinson's trucks were spotted some 75 feet west of the compressor. A 1⅛ inch cable was placed around the compressor and then connected to the compressor by a 1¼ inch "tail chain". The cable consisted of six strands with 37 wires to each strand. Upon a hand signal by Robinson's foreman, the two truck drivers tightened their winch lines to pull the cable, which in turn was supposed to move the compressor from the "low-boy" down some wooden skids onto the building foundation. Due to muddy conditions the trucks were unable to move the compressor until an "anchor" truck was placed into service. Some four or five unsuccessful efforts to move the compressor were made before the fatal accident occurred. After adjusting the cable around the compressor the cable was again pulled and it broke. The tail chain was thrown in a northwesterly direction, across the uncompleted building and struck Ellis, who was standing approximately 72 feet away. He was killed instantly. The chain landed some fifteen feet beyond where Ellis stood when he was struck.

The jury found: one strand of the cable or 'lash line' broke during the pulling effort before the pull was made when Ellis was killed; that some employees of Robinson knew one strand was broken; that Robinson's employees continued to use the cable after they knew that one strand had broken; that such continued use was negligence and a proximate cause of Ellis' fatal injury; that Robinson failed to warn Ellis of the broken strand; that such failure was negligence and a proximate cause of the injury; that Robinson failed to use lubricants on the skids of the compressor prior to unloading it from the low-boy; that such failure was negligence and a proximate cause of Ellis'

fatal injury; that Robinson failed to level the low-boy before applying pressure on the cable; that such failure was negligence and a proximate cause of the fatal injury; that some employees of Bowden Company knew one strand of the cable was broken prior to the accident; that Bowden, through its employees, permitted the use of the cable after it was known one strand was broken; that such action was negligence and a proximate cause of the injury; that prior to Ellis' fatal injury Bowden's employees failed to maintain that character of lookout for Ellis' safety as would be maintained by an ordinary prudent person under the same or similar circumstances; that such failure was a proximate cause of the injury; that Robinson's employees also failed to maintain a proper lookout and that such negligence was a proximate cause of the fatal injury; that Bowden's employees failed to warn Ellis that a strand of the cable had broken; and that such failure was negligence and a proximate cause of the injury; that Ellis was in the performance of his duties for his employer, El Paso Natural Gas Company at the time of his fatal injury; that Robinson's employees were grossly negligent in knowingly permitting the cable to be used after one strand was broken and in failing to warn Ellis of the broken strand; and that the two acts of gross negligence were each a proximate cause of the fatal injury; however no exemplary damages were awarded. In response to the defensive issues the jury found Ellis did not fail to maintain a proper lookout for his own safety; that Ellis' death was not the result of an unavoidable accident; that Ellis did not know, nor should have known, in the exercise of ordinary care that he was in a position of danger; and that Ellis did not fail to retire to a position of safety in respect to the attempt to move the compressor. Upon these findings, together with those of the damage issue, the trial court entered judgment for Mrs. Ellis and the three minor children against the two defendants jointly and severally.

Because of the multiplicity of issues and different positions of the two defendants, an orderly disposition of the case is not without difficulty. We will first discuss and dispose of Robinson's contention that plaintiffs' pleadings preclude any recovery against Robinson for the reason, under their pleadings, employees of Robinson were special or borrowed employees of Bowden. The plaintiffs' pleadings which form the basis of this contention, reads: "Plaintiff alleges that at the time and on the occasion in question both defendants were in the process of attempting to unload the motor and compressor unit, from a trailer or 'low-boy' truck owned by Defendant J. A. Robinson & Sons, Inc., through the use of two trucks owned and operated by Defendant J. A. Robinson, its agents, servants and employees, who were working under the direct supervision and control of employees and agents of Defendant Bowden Construction Company, Inc. At the time of the occurrence made the basis of this suit; the winch lines, cables and chains of two trucks owned and operated by Defendant J. A. Robinson, were attached to the 90-ton motor and compressor unit, and the employees of this corporation were assigned to and working exclusively under the supervision and control of the Defendant, Bowden Construction Company; and its supervisors, foremen and other employees." Robinson takes the position this is a judicial admission that Robinson's employees were in fact and law employees of Bowden; and that the latter Company alone is responsible for the operational negligence, if any, of any Robinson employees. Although it recognizes the general rule that the burden is upon an employer who wishes to escape liability on the ground its general employees entered into a special employment for another. Robinson says it was relieved of this burden by plaintiffs' own pleadings.

It is the general rule that admissions in trial pleadings are regarded as judicial admissions in that case, and require no proof of the admitted fact and authorize

introduction of no evidence to the contrary. Kirk v. Head, 137 Tex. 44, 152 S.W.2d 726. Canales v. Bank of California (Tex.Civ. App.) 316 S.W.2d 314 (Ref. N. R. E.), and cases cited therein. However, as stated by Chief Justice Alexander in Motor Investment Company v. City of Hamlin, 142 Tex. 486, 179 S.W.2d 278: "A pleader is not concluded by averments of legal inferences if such inferences are repugnant to true legal conclusions to be drawn from state of facts alleged in the same pleading." The amended petition contained other allegations that must be considered. The sentence following the allegations quoted above contained this language: "At the time and on the occasion in question . . . and employees of both defendants were in the process and attempting through the use of only two trucks to remove and slide the motor and compressor from the 'low-boy' onto skids." The next paragraph of the amended petition reads: "Plaintiffs allege the occurrence of September 1, 1964 *was brought about and caused by the negligent acts of both the defendants, or agents and representatives acting together and in concert and all of whose employees were working and acting in the course and scope of their respective employment with both of said defendants, which acts of negligence will be set in detail as to each of said defendants.*" (Emphasis added). The petition must be considered as a whole. When the petition is viewed in its entirety it is apparent the legal conclusion complained of is contrary or repugnant to the true legal conclusions drawn from the facts alleged in the pleadings as a whole. This conclusion is in conformity with Producers Chemical Company v. McKay, 366 S.W.2d 220 (Supreme Court) which held: "If the general employees of one employer are placed under control of another employer in the manner of performing their services, they become his special or borrowed employees. If the employees remain under control of their general employer *in the manner of performing their services,* they remain employees of the general employer and he is liable for the consequences of their negli-

gence." (Emphasis added). We are of the opinion the pleadings do not constitute a judicial admission that Robinson's employees are borrowed employees of Bowden.

■ In order to determine the liability of either or both defendants the position or status of Ellis on the premises must first be established. It is uncontradicted that Ellis was an employee of El Paso Natural Gas Company, the owner of the premises. El Paso had contracted with Bowden to construct the compressor station which consisted of a 75' x 45' steel structure and the installation of the compressor unit. Ellis was described as a field auditor whose duties included checking the time of Bowden's employees and materials used in the construction job in accordance with the written contract between El Paso and Bowden. Ellis had duties to perform for his employer on the premises. Bowden was not given exclusive control of the premises, nor can it be said Robinson was given such exclusive control of the premises. We conclude Ellis' status as to both Bowden and its subcontractor, Robinson was that of an invitee and not a licensee. Hernandez v. Heldenfels, 374 S.W.2d 196 (Supreme Court 1963). In the latter case there was no evidence the owner of the premises granted the occupants the exclusive use of the premises. In the instant case not only did the owner of the premises not grant the occupant the exclusive use of the premises, but El Paso was specifically permitted by its contract to place employees on the construction site to check the contractor's employees time and the materials used. Ellis not only had a right to be on the premises, but his duties were directly related to Bowden's performance of the construction contract. Ellis was on the premises in furtherance of his employer's interests. He was an invitee both as to Bowden and Robinson.

We will first consider and determine the liability of Bowden, the general contractor, on the construction project. This liability involves the relationship between Robinson and Bowden in addition to its relationship to

Ellis. The record shows Bowden contracted with El Paso Natural Gas Co. to construct the compressor station. Bowden employed Robinson, a trucking company, to move the compressor from a railway flatcar; transport it to the building site, and set it upon a concrete foundation in the incompleted building. The question is was Robinson a servant or independent contractor of Bowden. Industrial Indemnity Exchange v. Southard, 138 Tex. 531, 160 S.W. 2d 905 laid down the general rule:

"The general rule relating to independent contractors rests upon certain recognized tests; although such tests are not necessarily concurrent with each other, nor is each test in itself controlling. Such tests are: (1) The independent nature of his business; (2) his obligation to furnish necessary tools, supplies, and material to perform the job; (3) his right to control the progress of the work, except as to final results; (4) the time for which he is employed; and (5) the method of payment, whether by time or by the job. There are other tests, but the foregoing are considered the essential tests upon which such rule is based."

■ Robinson was employed by an oral agreement to perform a particular job: transport and set the compressor upon its foundation. Robinson was a licensed trucking carrier, White, Bowden's superintendent testified: "We can't haul other people's stuff, because we don't have that kind of permits"; Robinson furnished its own trucks which were equipped for the particular job, a low-boy and other tools; and furnished their own employees to operate the trucks and winches; were paid on the basis of distance, that is, 159,800 pounds at 16¢ per 100 weight; and for unloading and setting of the compressor on its foundation Robinson charged $15.00 per hour for a 12-ton truck and $12.00 per hour for an 8-ton truck. Robinson supplied its own foreman, Mr. Edler, who testified: "Stone (Bowden's superintendent) showed me which end to load the motor from, where it

would go on the foundation right and how he wanted the motor set on the foundation —I didn't need any other instruction". Edler further testified that he "was in charge of the operation—I have done this kind of job, moving a compressor unit such as this, a thousand times or more I would imagine". In reference to his signalling the winch operators, he testified: "I was flagging the equipment". We conclude the uncontradicted evidence establishes that Robinson was an independent contractor of Bowden. There is no evidence Bowden exercised any control over the details of Robinson's work and the only evidence of Bowden's right of control was its instruction concerning the end result. The courts have repeatedly held that an employer has the right to exercise such control over an independent contractor that is necessary to insure the performance of the contract, in order to accomplish the results of the contract contemplated by the parties, without thereby creating such contractor an employee of such company. Industrial Indemnity Exchange v. Southard (supra). Wise v. Texas Employers Insurance Association (Tex.Civ.App.) 402 S.W.2d 228 (Ref.N.R.E.). Hill v. Wesco Materials Corporation (Tex.Civ.App.) 382 S.W.2d 786. We conclude Robinson was an independent contractor of Bowden.

■ The law is well settled that as a general rule an employer is not liable for the acts of an independent contractor. Siratt v. City of River Oaks (Tex.Civ. App.) 305 S.W.2d 207 (Writ Ref.). Although this rule has exceptions, such as the case where the employer assumes control of the work, Houston B & T Ry. Co. v. Scheppelman (Tex.Com.App.) 235 S.W. 206; or where the work to be performed is inherently dangerous, Loyd v. Herrington, 143 Tex. 135, 182 S.W.2d 1003, we find nothing in this record to take Bowden out of the general rule. Bowden, as general contractor and occupier of the premises, does owe the duty to use due care to provide a safe place for workmen on the premises. Smith v. Henger, 148 Tex. 456, 226 S.W.2d

425, 20 A.L.R.2d 853. This duty is owed to employees of Robinson as an independent contractor as well as to authorized employees of El Paso Natural Gas Company, the owner of the premises. Cases have drawn the distinction between those involving "conditions" of the premises and an "activity" or "instrumentality" which causes the injury. Moore v. Texas Company (Tex.Civ.App.) 299 S.W.2d 401 (Ref. N.R.E.). It is evident Ellis met his death as a result of an "activity" or "instrumentality" rather than a "condition" of the premises. The activity was the broken cable which caused the tail chain to strike Ellis and not from a condition of the premises. This was an instrumentality or activity of Robinson and not of Bowden. Bowden's liability is determined by the well settled rule that the occupier of land owes no duty to protect an independent contractor or his employees from dangers arising from the performance of the work which the independent contractor was employed to do. Perez v. Hernandez (Tex.Civ.App.) 317 S.W.2d 81 (Ref. N.R.E.). Nance Exploration Co. v. Texas Employers Insurance Association (Tex.Civ.App.) 305 S.W. 2d 621 (Ref. N.R.E.). Moore v. Texas Company (supra). Texaco, Inc. v. Roscoe, 290 F.2d 389 (5th Cir.). Eastman Kodak Company v. Martin, 362 F.2d 684 (5th Cir.). This same rule is applicable in determining Bowden's liability to Ellis, an invitee, for dangers arising from the work being performed by Robinson. Although Ellis was not an employee of Robinson but an employee of the owner of the premises he was an invitee, and as such was not a "third person" within the rule that an employer of an independent contractor is liable to third persons for the negligence of independent contractors in the performance of work that is inherently dangerous. Humble Oil & Refining Co. v. Bell (Tex.Civ.App.) 180 S.W.2d 970 (Writ Ref.) 142 Tex. 645, 181 S.W.2d 569. The transporting and moving of the large compressor was not an inherently dangerous operation. It only became dangerous by the manner in which it was being performed. Bowden owed no duty to protect Ellis from dangers resulting in his death arising from the manner of performing the work Robinson was employed to do.

However, the plaintiff alleged certain acts of negligence on the part of Bowden's servants and employees. In response to Special Issue submitted, the jury found Bowden "through its employees" failed to keep a proper lookout for Ellis; and failed to warn Ellis of a broken cable strand; and the issue if "any of the employees of Bowden" knew a strand of the cable broke, was answered in the affirmative. While Bowden owed no duty to protect Ellis from dangers resulting from the manner Robinson performed the work they were employed to perform as an independent contractor, this does not relieve Bowden of liability for the negligent acts of its own servants or employees in the course of their employment. However, there is no evidence to support the jury verdict as it pertained to acts of Bowden's employees. In the first place the acts inquired about referred to an activity or instrumentality employed by Robinson. We have held Bowden owed no duty to Ellis for dangers resulting from Robinson's activities. The crucial act which caused Ellis' death was the appliance of pressure upon the cable after one of its strands was broken. This was done by Robinson's employee upon a signal from its own foreman. This was an act over which Bowden had no control. No inquiry was made of the jury as to whether Bowden's employees "continued to use the cable" after a strand had broken; rather, the issue inquired if Bowden, through its employees, "permitted the use of the cable" after a strand had broken. If Bowden had no control of Robinson's operation, as we believe, they were under no duty relative to the using of the cable and has no authority to permit or deny the use of the cable in its condition. It is a fundamental rule of law that for there to be actionable negligence, there must be a violation of a duty owed to a person claiming on the ground of negligence. If no duty exists, no legal lia-

bility can arise on account of negligence. 40 Tex.Jur.2d, Negligence, Section 6, page 448 and the cases therein cited.

We think there is another basis that relieves Bowden of liability. Even if it is assumed that its employees, Butler or Stone, or both of them observed the broken cable, neither Butler or Stone performed any act which exposed Ellis to the danger. The instrumentality which caused Ellis' death was the broken cable throwing the tail chain against him. The break was brought about by applying pressure upon the cable after one of its strands had broken. The pressure was applied by Robinson's employees on a signal by Edler, the foreman. There is no evidence Edler gave any indication he was to give the signal prior to the time he actually gave it. There was no obligation or duty upon either Stone or Butler to anticipate that Edler did commit a negligent act, which the jury found this act to be. A person is not bound to anticipate negligence or unlawful conduct on the part of another. Intges v. Dunn (Tex.Civ.App.) 311 S.W.2d 877 (Ref. N.R.E.). Texas & N.O.R. Co. v. Brannen, 140 Tex. 52, 166 S.W.2d 112. Having no direct control of Robinson in the manner of performing its work, Bowden cannot be held liable for such actions it did not control or anticipate.

The duty which Robinson owed to Ellis is also in issue. Not only does the rule in Hernandez v. Heldenfels (supra) support our conclusion Ellis was an invitee as to Robinson, but the decision in that case is also applicable in determining Robinson's duty to Ellis. In both cases the injured parties were employees of the owner of the land; and both received injuries from an instrumentality or activity operated by an independent contractor of the land owner's general contractor. In *Hernandez*, the invitee was injured when struck by the independent contractor's truck as it was backing on the owner's premises. The court said: "[I]t cannot be said that the dangerous instrumentality which resulted in Hernan-

dez's injury was open and obvious within the meaning of that phrase as used in the 'invitee' cases." In restricting "activities" in "no duty" cases the court seems to have applied it only if the "conditions be moveable in part, such movement is generally rigidly circumscribed and easily predictable." We conclude the broken cable strand and the application of pressure after the broken strand became known, was not such an open and obvious activity which could be related to Ellis' death. Robinson's liability must therefore be governed by negligence and contributory negligence rather than the "no duty" concept.

Robinson pleaded the affirmative defense of "volenti". As stated in Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Sup.Ct.1962), volenti means: "a person may not recover for an injury received when he voluntarily exposes himself to a known and appreciated danger." Thus, for volenti to be applicable there must be actual knowledge and appreciation or the intention must be so open and obvious that the plaintiff must be charged by law to have that knowledge and appreciation. Brown v. Lundell, 162 Tex. 84, 344 S.W.2d 863. Dee v. Parish, 160 Tex. 171, 327 S.W.2d 449. J. & W. Corporation v. Ball, 414 S.W.2d 143 (Sup.Ct. January 11, 1967.).

In response to Special Issue No. 16 the jury found that Ellis did not know nor should he have known, in the exercise of ordinary care, that the position he was occupying was one of danger. The jury's negative answer to this issue precluded the jury's consideration of the conditional issues inquiring if Ellis voluntarily placed himself in such position of danger, and if such action was a proximate cause of his death. Although the court in Halepeska held this "should have known" issue was not a jury question under "no duty" or "volenti" concepts, a defendant is entitled to have this issue submitted as a contributory negligence issue. If there is evidence to support the finding in respect to Special Issue No. 16, the volenti defense is not

available to the defendant, in view of the finding Ellis did not have actual knowledge of the danger. A person cannot be charged with having made a choice to assume a risk he was not aware of.

■ The facts and circumstances, are not such as to hold the danger was so open and obvious that Ellis was charged as a matter of law with such knowledge and appreciation thereof. The danger involved here was an activity or instrumentality and not a condition. It was the attempted pulling of the heavy compressor from the low-boy trailer onto its foundation. It involved two large trucks which applied pressure on a steel cable. Ellis was approximately 72 feet from the operation. He was standing beside or very near to James D. Cook, another El Paso employee, and was standing beside a steel girder erected to provide a doorway in the completed building. Both Cook and George Butler, a rigger for Bowden, testified Ellis was not warned he was in a position of danger, and no one informed him that a strand of the cable had broken. Butler testified concerning Ellis' position at the time he was struck: "If I had been watching it I would figure that was a pretty safe place over there, the distance and everything." Although it could be forcibly argued such an activity, that is, moving a tremendously heavy piece of machinery, must necessarily be dangerous, the risk from which the actual injury occurred must be known and appreciated. It is not enough that the overall danger and risk was known and appreciated. Triangle Motors v. Richmond, 152 Tex. 354, 258 S.W.2d 60. In that case the plaintiff was looking down into an open elevator shaft when he was struck from above by the descending elevator. The plaintiff was not charged with the knowledge of that danger and the court ordered the case tried on the issues of negligence and contributory negligence. Ellis had experience on these construction jobs, but it cannot be said this is sufficient within itself to charge him with knowledge and appreciation of the particular risk. The record does not reveal whether or not he had witnessed this particular type of operation. Others, more experienced in these operations, testified he was considered to be in a safe place. Although the evidence is in conflict there was positive testimony from two witnesses that a strand of cable broke before the fatal attempt to move the compressor. There is no evidence Ellis had knowledge of this nor was warned of it. We are of the opinion and so hold the defendant Robinson failed to sustain his burden and prove his affirmative defense of "volenti".

■ We now come to the portion of the case dealing with issues of negligence on the part of Robinson and contributory negligence. It is urged there is no evidence and insufficient evidence to support the findings as to the contributory negligence issues of Ellis' failure to retire to a place of safety and lookout. The jury found for the plaintiff in both instances. As stated, the jury also found Ellis did not know he was in a position of danger. This determination must be made from the record as it appeared at the time of the accident. The activity was potentially dangerous. The only evidence that Ellis did not retire to a place of safety was the fact he was struck with the tail chain and killed instantly. Both Cook and Butler testified that they considered Ellis' position, 72 feet away behind a steel doorway frame, to be safe. He was on the site as an employee of the owner of the premises. He had a job to perform. There is no testimony he was warned that a strand of the cable was broken nor was there any evidence he could have seen it from his position. Lookout does not entail the seeing of minute happenings or acts at such a distance. We are constrained to hold there was probative evidence to support these jury findings that Ellis was not contributorily negligent.

■ The contention is next made that there is no evidence and insufficient evidence to support a multiple of findings that Robinson was negligent in certain respects previously mentioned. In determin-

ing these contentions we will adhere to the applicable rule set out in In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660. In doing so, efforts will be made to avoid as much repetition as possible. Little may be added to a determination in the "no evidence" aspect of these issues, when we are only to consider the evidence most favorable to the findings and disregard the evidence to the contrary. At least two witnesses, Doyle James, a truck driver for Robinson, and George Butler, a rigger for Bowden, testified that they saw a strand of the cable had broken just prior to the pulling operation which broke the cable. James left his truck and pointed out the broken strand to Edler, Robinson's foreman. There is positive testimony pressure was applied to the cable upon Edler's signal after this break was detected and called to Edler's attention. There is a complete absence of testimony that anyone warned Ellis of this broken strand. Lookout is subjective and must be ascertained from the circumstances surrounding the activities. There is evidence the foreman for Robinson warned several employees to stay clear and not stand behind the trucks during the general operation, but there is no evidence Ellis, Cook, and others were warned the position they took—some 70 feet north and west of the operation—was a position of danger. Ellis was easily visible for all to see. We conclude there was probative evidence to support these jury findings.

In determining whether these findings were against the great weight and preponderance of the evidence we must consider all the evidence presented. The only conflict or contradiction to the testimony previously outlined is the testimony of Edler and Stone that they did not see or notice the broken strand. They both denied this break was called to their attention by James, Butler or anyone else. Mr. Edler testified: "We told everybody to get out of the particular area where we were working" and "we cautioned them they should move back out of the way". Others testified to general warnings given to "them" or "everybody". The jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. The jury resolved the conflicting testimony in favor of the plaintiffs. We cannot say these findings were so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust.

Robinson, the owner and operator of the trucks and other equipment being used to move the compressor, also was charged with negligence in failing to lubricate the skids under the compressor in the attempt to move it; and in failing to level the low-boy before attempting to move the compressor unit. The jury found such negligence was a proximate cause of the fatal injury. Robinson does not challenge the findings that these two events occurred, but they do challenge that there was any departure from ordinary care and that these failures contributed to the cause of the accident. The record reflects no evidence relative to the lubrication of the skids other than testimony of two employees that it was not done. We must speculate in what way the absence of lubrication contributed to the injury. However, in view of other acts of negligence and proximate cause found against Robinson, the absence of evidence in support of this finding would not be material. There was testimony the low-boy was tilted "a little bit to the east" during the pulling operation. Witness James testified "I don't think there would be any doubt that you would be applying more pressure of pounds, to move it than it would be if you had it level". This was corroborated by Butler. We conclude there was sufficient evidence to support the jury findings of negligence and proximate cause of this action.

Both appellants attack the jury finding that Ellis was in the performance of duties for El Paso, his employer, at the time of the fatal injury. These points are related to the "no duty" contention in that appellants urge there is no evidence and insufficient evidence that Ellis was in the

performance of his duties at the time that he sustained the fatal injury, hence he was a licensee rather than an invitee. We have already determined that Ellis was an invitee under the facts and law set out in Hernandez v. Heldenfels (supra). To support their contention the appellants quoted statements from that same case which says: "It may also be recognized that the entire premises need not be considered as a unit for a person may be a trespasser or a licensee as to a certain portion only". We have no quarrel with the statement but we do not think it offers relief to appellants under this record. As El Paso's field auditor and timekeeper Ellis was on the premises where the work under Bowden's contract was being carried on. He had certain duties to perform. He checked Bowden's employees' time, that is to see that they were working and how long they worked; and he further checked materials being put into the job. Cook, his fellow employee, testified Ellis was engaged in his duties at the time he was killed. There is no evidence he was not. It would be most difficult to look at a man and determine whether or not he was mentally checking and calculating laborers' time. It is not quite like observing one digging a ditch or moving a wheelbarrow. Ellis was in a position to see Bowden and Robinson's employees. It is uncontradicted they were working overtime at the time of the accident. This was a necessary part of his duties. We cannot say he would be an invitee 60 feet away from the pulling operation but a trespasser or licensee 72 feet away. We conclude there is ample evidence to support the finding Ellis was in the performance of his duties and that he was an invitee.

▮▮▮ Numerous objections are leveled to Special Issue No. 11, the damage issue, and the instructions given with it. The court's instruction in connection with the damage issue reads in full:

"In connection with the above issue and your answer thereto you are in-structed that you can only consider the pecuniary loss, if any, sustained by each plaintiff and you cannot allow plaintiffs anything by way of consolation for the death of Joseph Henry Ellis or for any sorrow, anguish or grief suffered by these plaintiffs as a result of his death.

"By pecuniary loss, if any, sustained by Mary Francis Ellis, surviving wife of Joseph Henry Ellis, is meant that you may take into consideration loss of maintenance and support, if any, services, if any, contributions from the earnings of Joseph Henry Ellis, if any, and care and counsel, experience, knowledge and judgment in managing affairs, his personal attention, protection and assistance, if any, that the said Mary Francis Ellis would in all reasonable probability have received from the said Joseph Henry Ellis, during his lifetime, had he lived.

"By pecuniary loss, if any, sustained by Kathryn Joe Ellis, Michael Arron Ellis, and Mark Joseph Ellis, minor children of the said Joseph Henry Ellis, deceased is meant that you may take into consideration loss of maintenance, support, value of services which deceased would have rendered in training and educating all of his children; care, counsel and advice, moral advice, nurture, care, and training, of all the children, if any, the said Kathryn Joe Ellis, Michael Arron Ellis, and Mark Joseph Ellis, would in all reasonable probability have received from the said Joseph Henry Ellis, during the minority of each of the said minors, had he lived."

It is argued the charge did not exclude loss for society, affection and companionship; that the instruction permitted recovery for both "care" and "personal attention, protection and assistance" permitting double recovery for both the wife and children; that "counsel and advice" and "training" were treated as separate elements; that "care" was used twice as an element of damages; that "maintenance and support" overlap "nurture and care"; and that the

instruction constituted a comment on the weight of the evidence through failure to interpose the precautionary term "if any" to separate the damage items. When the language of the instruction as a whole is considered the absence of the exclusion "society, affection and companionship" is not erroneous. The court instructed the jury "you can only consider the pecuniary loss, if any, sustained * * * and you cannot allow plaintiffs anything by way of consolation for the death * * * or for any sorrow, anguish or grief sustained as a result of his death." The language of the instruction contains the proper exclusion when it is read in connection with the instructions as a whole. Minor children may recover the value of services which a deceased father, in reasonable probability, would have rendered to them in "training, advice and educating them". Continental Bus System, Inc. v. Biggers (Tex.Civ.App.) 322 S.W.2d 1 (Ref. N.R.E.). Appellant Robinson strongly relies on International & G. N. Ry. Co. v. McVey, 99 Tex. 28, 87 S.W. 328 as authority for the alleged error in omitting the exclusion of the loss of "society, affection and companionship". The general rule in a wrongful death case is that the charge should expressly exclude from the jury consideration the elements of grief, loss and society, mental pain and anguish. Gulf C. & S. F. Ry. Co. v. Farmer, 102 Tex. 235, 115 S.W. 260. Burlington-Rock Island Ry. Co. v. Ellison (Tex.Civ.App.) 134 S.W.2d 306 (Writ Ref.); 17 Tex.Jur.2d. Death by Wrongful Act, Section 127. Generally, when the court charges the proper measure of damages and excludes any allowance for loss of companionship or as a solace for grief, the charge is affirmatively erroneous, but this rule is applicable only where the measure of damages as submitted, including the exclusions, is broad enough to include elements of damages complained of by the objections. Gillette Motor Transport v. Blair (Tex.Civ. App.) 136 S.W.2d 656 (Dismissed Judg. Corr.). Under this record we do not think the charge is subject to the objec-

tions made. Plaintiffs' recovery was expressly limited to "pecuniary loss if any" and the court excluded the jury's consideration of "consolation * * * or for sorrow, anguish or grief" suffered by plaintiffs as a result of Ellis' death. We find no reversible error in connection with the above instruction. Rule 434, Texas Rules of Civil Procedure.

Appellants further urge the instructions were calculated to allow a double recovery for both the wife and children. This is based on the use of the words "care" and "personal protection and assistance" in referring to the wife; and the argument is these are separate items of damages. As to the children's permissive recovery appellants complain of use of the term "care and advice", "training" and "counsel and advice and moral advice"; that "care" was used twice; and the assertion "maintenance and support" overlapped "nurture and care". Where the language of an instruction did not mislead a reasonably intelligent jury into allowing compensation twice for the same loss, judgment will not be reversed on such grounds. Southwestern Bell Telephone Co. v. Ferris (Tex.Civ.App.) 89 S.W.2d 229 (Error Dis.). McClung Construction Co. v. Muncy (Tex.Civ.App.) 65 S.W.2d 786 (Error Dis.). The words and phrases complained of are of common usage and their meanings are readily understood. We do not believe the instructions were calculated to mislead the jury. There is no indication they were. No reversible error is presented.

Appellants also point out the instruction to the damages issue was on the weight of the evidence in that there was an assumption certain elements of damages actually existed because of the absence of the phrase "if any" after each element of damages enumerated. This contention is without merit. The explanatory instruction contained the phrase "if any" eight times. It followed each definition of "pecuniary loss" in referring to both the wife and children. The phrase follows either a

single element of damages or a series of elements of damages the jury was authorized to consider. There was evidence to support the submission of these elements and we do not think the absence of the phrase after each separate element of damages constitutes a comment on the weight of the evidence. It is not misleading. Each element is somewhat related. We conclude this portion of the charge does not present reversible error.

■ Other objections are leveled at the issues inquiring if Robinson, through its employees, failed to warn Ellis that a strand of the cable was broken, and if that failure was negligence and a proximate cause of the fatal injury. The contention is that they placed emphasis on plaintiffs' theory of recovery; unduly limiting the inquiry to the one incident; assumed that the defendant had notice of Ellis' position of danger; it fragmented the issue into minute details. The crux of plaintiffs' cause of action was the alleged fact a strand of the cable broke after which Robinson proceeded with the pulling operation. The jury found the strand broke and that employees of Robinson knew it and then proceeded in the pulling operation. The conditional submission of these issues removed the objections of improper emphasis. The question of duty to Ellis and knowledge of his position of danger have already been discussed and need not be repeated here. We conclude these points of error are not well taken. The issues as submitted present no reversible error. Holmes v. J. C. Penney Co., 382 S.W.2d 472 (Sup.Ct. 1964).

■ The testimony of witness Alexander was admitted over the objection it was "immaterial and irrelevant", to the effect the crew did not "go ahead and unload the compressor that evening after Ellis' fatal injury". The objection of immateriality was made to witness Butler's testimony that he served as a steel worker and rigger in the Sea Bees during World War II and Korea. We agree this testimony was immaterial and irrelevant to the issues of the case, however we are of the opinion its admission was not reasonably calculated to cause and probably did not cause an improper judgment, and was not reversible error. Bridges v. City of Richardson, 163 Tex. 292, 354 S.W.2d 366.

■ The jury verdict in this case was rendered, accepted and filed on July 26, 1965. On August 9, following, Robinson propounded interrogatories concerning her remarriage to Mrs. Ellis and submitted other interrogatories concerning her present husband and her previous relationship to him. On September 8, 1965 Robinson filed a suggestion of marriage of Mrs. Ellis and requested the joinder of her husband as plaintiff. The trial court sustained plaintiffs' motion to quash the interrogatories and overruled the suggestion of marriage. The suggestion of marriage alleged Mrs. Ellis married Bobby Self on July 31, 1965, five days after the verdict was returned and filed. Rule 168, T.R.C.P., under which appellants sought to propound the interrogatories, is a pre-trial procedural step. Rule 157 provides that a suit by a feme sole shall not abate by her marriage but upon suggestion of such marriage the husband *may* make himself a party plaintiff. (Emphasis added.) This is permissive and optional with the husband. It is our view the provisions of Rule 157 pertain to party plaintiffs and has application where the marital status changes before the completion of the trial and not after the return of the verdict. Even before the adoption of Article 1983, Vernon's Ann.Civ.St., Texas followed the general rule that a remarriage of a surviving spouse does not abate a cause of action for wrongful death of the deceased spouse. International & G. N. Ry. Co. v. Kuehn, 70 Tex. 582, 8 S.W. 484. It is also settled that the remarriage of a surviving spouse or the possibility thereof, does not affect the damages recoverable for wrongful death of the deceased spouse. Gulf C. & S. F. Ry. Co. v. Younger, 90 Tex. 387, 38 S.W. 1121. Gulf C. & S. F. Ry. Co. v. Moser (Tex.Civ.App.) 277 S.W. 722. As a corollary to the above

general rule, evidence of the surviving spouse's relationship is not admissible where it is offered only for the purpose of mitigating damages. Gulf C. & S. F. Ry. Co. v. Younger (supra). Texas Electric R. Co. v. Stewart (Tex.Civ.App.) 217 S.W. 1018 (Writ Ref.). See 87 A.L.R.2d 252. Appellants recognize these general rules in that they seek to ascertain facts beyond the bare fact of remarriage; that is, they seek to learn of the facts surrounding Mrs. Ellis' association with her new husband. They cite Dixie Motor Coach Co. v. Shivers (Tex.Civ.App.) 131 S.W. 2d 677 (Dis.Judg.Corr.). This case involved the exclusion of certain letters written to the wife before the deceased husband's death by the man she subsequently married, but prior to the trial. The court held the exclusion of the letters and the trial court's instruction that such relationship could not be considered for any purposes was reversible error. That case is not in point. Mrs. Ellis' marriage to Self was after the trial and there is no evidence or even an inference of any previous relationship between the two prior to Ellis' death; or for that matter after his death and before the trial. In the *Shivers* case the court said: "Where there is no friction between the husband and wife, no facts showing the likelihood of a final, legal separation, and the relationship shows a calm and undisturbed matrimonial sea, there is nothing for the jury to find except the reasonable pecuniary value of these services and contributions, because it must be presumed that the relationship will be continued until death, under such natural human relationships. But such a picture is not presented to us at the case at bar." In the instant case the language here quoted does present such a picture of the relationship of Mr. and Mrs. Ellis. Appellant's points of error pertaining to the trial court's action are overruled.

 The U. S. Fidelity & Guaranty Co., the workmen's compensation carrier intervened and asked for subrogation rights in the amount of $2080.00, which included weekly payments of $35.00 plus funeral expenses. It was stipulated by all parties the compensation carrier had assumed responsibility to pay full death benefits for 360 weeks at $35.00 to the surviving wife and children and to make such payments on a weekly basis. The judgment awarded the sum of $2080.00 to the carrier. Appellants contend the recovery of the plaintiffs should be reduced by the difference between $2080.00 and the full amount of death benefits that will accrue in the future. Under Article 8307, Section 6a, V. A.C.S., the compensation carrier is subrogated to the rights of the employee to the amount paid and assumed to be paid to the beneficiaries. If the compensation carrier should refuse to bring suit against a third party the injured employee or his representative may bring such suit. Houston Gas & Fuel Co. v. Perry, 127 Tex. 102, 91 S.W.2d 1052. The compensation paid Mrs. Ellis and her children by the insurance carrier was paid under the employer's insurance policy and was in no sense voluntary. Under similar circumstances the Commission of Appeals in Otis Elevator Co. v. Allen, 143 Tex. 607, 187 S.W.2d 657 (Opinion adopted) said such payment "was of no concern to the alleged negligent third party, the elevator company, that out of the damages recovered against it the compensation carrier was reimbursed for the compensation benefit paid by it to the claimants." The carrier's plea of intervention limited its claim in this suit to the sum of $2080.00, the amount it had paid to the date of the trial. The judgment limited the carrier's recoupment to this amount and it makes no complaint of the judgment. The right of the insurance carrier to subrogation or the rights of any express recovery over against a negligent third party for damages above the amount of compensation received, is a property right, subject to sale or assignment. The appellants, third parties in this transaction, do not show harm or injury be deducting only the amount of compensation collected by plaintiffs. Foster v. Langston (Tex. Civ.App.) 170 S.W.2d 250. Appellants' lia-

bility for the death benefits was limited by the jury award. The division of the award between plaintiffs and the compensation carrier has no effect upon the amount appellant would otherwise be required to pay. Houston Gas & Fuel Co. v. Perry (supra) relied on by appellants is not controlling. There the plaintiff was allowed recovery from the third party an amount in excess of the compensation paid and assumed, but no recovery was allowed the compensation carrier. This was predicated on the ground there were no pleadings upon which such a recovery could be based. There were proper pleadings in the instant case and the intervenors' pleadings limited its recovery to the amount paid up to the time of the trial. The trial court properly awarded this recovery.

Finally, the contention is made the awarded damages to Mrs. Ellis and the three minor children were excessive. The jury awarded the surviving widow $80,000.00 and the three surviving minor children $40,000.00 each, making a total recovery of $200,000.00. The record shows the life expectancy of Mr. Ellis at the time of his death was approximately 44 years. Mrs. Ellis had the same life expectancy. The children were 4, 3, and 2 at the time of their father's death. Ellis, 27 years of age, began his employment with El Paso Natural Gas Co. shortly after his graduation from high school and had worked for them continuously until his death. He progressed over the years from office boy at $175.00 per month to senior clerk at a salary of $503.00 per month at the time of his death. His earnings during the year preceding his death were $9,015.06, which included overtime he worked while on field construction jobs. His regular base salary was approximately $6,000.00 annually. His work record was excellent. He received periodic promotions and merit pay increases. He was in excellent health. It is uncontradicted Ellis was a devoted husband and father.

In a wrongful death case the amount of damages to which the beneficiaries are entitled is primarily and peculiarly within the province of the jury; and in the absence of a showing that passion, prejudice or other improper matters influenced the jury, the amount assessed by them will not be set aside as excessive. Louisiana & A. Ry. Co. v. Chapin (Tex. Civ.App.) 225 S.W.2d 614 (Writ Ref.). Wells v. Henderson (Tex.Civ.App.) 78 S. W.2d 683 (Writ Ref.). Texas Consolidated Transportation Co. v. Eubanks (Tex. Civ.App.) 340 S.W.2d 830 (Ref. N.R.E.). Manifestly, the adequacy or excessiveness of the damages awarded must be determined according to the facts or circumstances of each case. 17 Tex.Jur.2d, Death by Wrongful Act, Section 60 and the numerous cases there cited. We see no need to cite other authorities for the well settled rules in determining whether the award was excessive.

Here we are dealing with a young man with a good work record; with a wife and three small children. He was a good provider, and it is uncontradicted he was a devoted father and husband. His past record with his employer reflected better things in the future. He was earning a substantial interest in the company's retirement plan. Unquestionably the jury award was large, however, the jury was entitled to consider and probably did, the decreasing value of the dollar. The City of Austin v. Hoffman (Tex.Civ.App.) 379 S.W.2d 103. In determining whether a verdict is excessive the evidence must be considered in a light most favorable to the award. Green v. Rudsenske (Tex.Civ. App.) 320 S.W.2d 228 and cases cited. Courts are reluctant to disturb jury awards on the grounds of excessiveness if there is any evidence to sustain the award. When we consider Ellis' long life expectancy; good work background; his income; with reasonable expectancy that it will improve; the long life expectancy of the wife; the tender age of the three children; and the

type of husband and father Ellis unquestionably was; we are of the considered view the verdict is not excessive.

All points of error of both appellants have not been specifically referred to, however, all have been considered and those not referred to present no reversible error. That portion of the judgment awarding recovery against appellant Bowden is reversed and rendered that appellees take nothing; that portion of the judgment awarding recovery against appellant Robinson is affirmed.

Reversed and rendered in part and affirmed in part.