Charles Edward CHRISTIAN and
Travelers Indemnity Co. of
Rhode Island, Appellants,

v.

TEXAS EMPLOYERS INSURANCE
ASSOCIATION, Appellee.

No. 05–82–01406–CV.

Court of Appeals of Texas,
Dallas.

Sept. 26, 1984.

Rehearing Denied Nov. 12, 1984.

Robert Hudnall, Cary Dorman, Walter C. Davis, Dallas, for appellants.

Tom J. Stollenwerck, Touchstone, Bernays, Johnston, Beall & Smith, Dallas, for appellee.

Before STEPHENS, WHITHAM and STEWART, JJ.

STEWART, Justice.

We grant the motion for rehearing and withdraw our prior opinion for purposes of clarification. This is now our opinion.

This is a worker's compensation case in which Texas Employers Insurance Association (carrier for Affiliated Food Stores, Inc.) filed suit to set aside the Industrial Accident Board's award of compensation from Texas Employers to Charles Edward Christian. Texas Employers named Christian and Travelers Indemnity Company of Rhode Island (carrier for Cannon Protective Services, Inc.) as defendants, and Christian filed a cross-action against both carriers alleging dual employment with both Affiliated and Cannon. The trial court denied Travelers' motion for summary judgment against Christian, which alleged that Christian was not eligible for worker's compensation benefits because he was an independent contractor of its insured, Cannon; Travelers did not appeal that adverse ruling. On the other hand, the trial court granted Texas Employers' motion for summary judgment against Christian, which alleged that, at the time of the injury, Christian was an employee of Cannon and not Affiliated; Cannon was the general employer and had the right to control the performance and details of Christian's work; and no "new" employment relationship was created between Christian and Affiliated. The trial court severed Christian's cross-action against Texas Employers and continued his cross-action against Travelers pending a ruling in this court. Both Christian and Travelers have perfected this appeal.

Travelers and Christian contend that a question of fact exists as to whether Christian was Affiliated's own employee or its "borrowed servant" at the time of the injury. In addition, Christian contends that a question of fact exists as to whether he was an employee of both Cannon and Affiliated, simultaneously, when he was injured and, thus, entitled to recover under the dual employment theory. We hold that a fact issue exists as to whether, at the time of the injury, Christian was an employee of Affiliated or, in the alternative, its "special employee" under the borrowed servant doctrine. A consideration of the dual employment theory is not necessary to the disposition of this case. Accordingly, we reverse the judgment and remand the case for trial on the merits.

Affiliated entered into an oral agreement with Cannon Protective Services, Inc., wherein Cannon provided security guard services, surveillance, and undercover investigators to Affiliated for a fee. Pursuant to this agreement Cannon advertised for a truck driver to work as an undercover investigator. Christian responded to Cannon's advertisement and successfully completed screening procedures for Cannon. Christian and Cannon then executed an agreement designating Christian as a "subcontractor" of Cannon, after which Christian was directed to go to Affiliated and to apply as a regular employee. Contingent upon being approved by Affiliated, Christian was to perform all the regular activities of a truck driver for that company and, additionally, he was to observe and report the actions and attitudes of other employees of Affiliated and send written reports to Cannon for a fee of $18.00 per report. According to their agreement, Cannon had the right to discontinue Christian's employment or to reassign him to another employer at any time.

Following Cannon's directions, Christian applied for employment with Affiliated. He successfully completed the regular employment examinations and interviews of Affiliated and was hired as a truck driver in March, 1979. In his capacity as truck driver, Christian made deliveries of food products to various grocery stores and was paid an hourly wage, with federal and social security benefits withheld, the same as any other employee of Affiliated. Affiliated paid Christian directly for his work as truck driver and did not distinguish Christian's employment in this capacity from that of any other employee. He received employee health and vacation benefits and was under the same supervision and control as any other Affiliated truck driver.

According to Christian, Affiliated had the right to fire him at any time.

Regarding Christian's surveillance work, Affiliated paid Cannon $800 per month for providing surveillance through Christian's services. When Christian and Cannon met to discuss the undercover operation, representatives of Affiliated would often attend and instruct Christian on who and what to observe. Cannon supplied the paper tablets and stamped envelopes for Christian's reports and gave him directions on general policies of surveillance and the types of things to write in the report.

At the time of his injury on September 24, 1980, Christian was attempting to unload food products from his truck at one of Affiliated's grocery stores. He stated in his deposition that he was not conducting surveillance at that time because he could not hear or understand the language other workers were speaking. After Christian was injured, Affiliated contacted Cannon and requested that Cannon terminate Christian's surveillance. When Cannon instructed Christian to resign his job with Affiliated, Christian replied that he liked the job and intended to continue his employment with Affiliated in spite of Cannon's directive. Christian continued to work for Affiliated for several days until he reported to a clinic recommended by Affiliated to have his injury treated. After the doctor released him for work, Christian attempted to return to Affiliated, but Affiliated refused to allow him to work.

■ The evidence before the trial court included answers to interrogatories, admissions, exhibits, and depositions from Christian; Frank E. Weise, representing Affiliated; Billy Ray Cannon, representing Cannon Protective Services; and Dr. Sarris, who treated Christian for his injury. Under TEX.R.CIV.P. 166–A the party moving for summary judgment has the burden of proving that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex. 1972). Thus, in order to grant summary judgment to Texas Employers, the evidence must show that, as a matter of law, Christian was not Affiliated's own employee or Affiliated's borrowed servant.

■ We must examine the relationship between the parties and determine who had the right to control Christian's work in order to ascertain Christian's status as a workman. *Goodnight v. Zurich Insurance Co.,* 416 S.W.2d 626 (Tex.Civ.App.— Dallas 1967, writ ref'd n.r.e.). All parties agree that, when a question arises as to which of two employers is liable for worker's compensation benefits, the Texas courts have adopted the special employee or borrowed servant doctrine. *Thate v. Texas & Pacific Railway Co.,* 595 S.W.2d 591 (Tex.Civ.App.—Dallas 1980, writ dism'd); *Associated Indemnity Co. v. Hartford Accident & Indemnity Co.,* 524 S.W.2d 373 (Tex.Civ.App.—Dallas 1975, no writ). Although we may look to all the incidents of employment, the crucial aspect for determining which of the two employers is liable for worker's compensation is which of the two had the right to control the manner in which the employee performed the services necessary to the accomplishment of the particular activity or service being performed by the employee at the time of his injury. *Producers Chemical Co. v. McKay,* 366 S.W.2d 220 (Tex.1963).

■ Texas Employers contends that the trial court was correct in granting it summary judgment because Christian was working for Affiliated only for the purpose of his undercover work for Cannon. It argues that Cannon directed Christian to act like a regular employee so that no suspicions would be aroused. It claims that Christian was conducting surveillance required by Cannon at the time he was injured and was unloading the truck only as a part of his undercover activities for Cannon. Thus, according to Texas Employers, no new employment relationship was created between Christian and Affiliated. It cites as authority *Wise v. Texas Employers Insurance Ass'n,* 402 S.W.2d 228 (Tex.Civ.App.—Houston 1966, writ ref'd n.r.e.), in which the court stated:

An employee in the general employment of one employer may be temporarily loaned to another so as to become a special employee of the second employer. It is held, however, that even though an employee may be subject to the direction of a temporary master no new relationship of employment is created, if, in following the directions of the temporary master, he is doing so merely in obedience to the direction of and in the performance of his duty to his employer. *Id.* at 231, quoting *Mercury Life & Health Co. v. DeLeon,* 314 S.W.2d 402, 405 (Tex. Civ.App.—Eastland 1958, writ ref'd n.r.e.).

In *Wise,* the claimant was a truck driver who was making a delivery to a warehouse. An employee of the warehouse showed him where to unload and place his cases in the warehouse. The court held that under these facts no "new employment relationship" was created, and, therefore, the carrier for the warehouse was not liable. In the instant case, Christian carried on his daily work in the same manner as any other employee of Affiliated for a period of some eighteen months. Although Christian may not have had the job with Affiliated *but for* his employment by Cannon, his relationship with Affiliated is clearly distinguishable from that of the claimant to the warehouse employee in *Wise.*

Texas Employers acknowledges that *United States Fidelity & Guaranty Co. v. Goodson,* 568 S.W.2d 443 (Tex.Civ.App.—Texarkana 1978, writ ref'd n.r.e.), stands for the rule of law that an employee who is temporarily loaned to a second employer becomes the servant of that employer "only if there exists the same elements in relation to the second as would constitute him a servant of that person were he not originally the servant of the first." *Id.* at 447. Texas Employers applies the *Goodson* test to the instant case to demonstrate that no new employment relationship was created between Christian and Affiliated because Cannon had a contractual right to fire Christian, to reassign him, or to demand that he leave Affiliated. However, the incidents of Christian's employment as

a truck driver with Affiliated and its control of his daily activities both as truck driver and undercover agent are significantly different from the facts of *Goodson.* Cannon's contractual right to fire or reassign Christian does not preclude a finding that Christian was an employee of Affiliated, which also had the right to fire Christian. Thus, we hold that a question of fact exists regarding Christian's employment relationship with Affiliated at the time the injury occurred.

Accordingly, we reverse and remand the case for a trial to resolve the questions of fact regarding Christian's claim against Texas Employers.

WHITHAM, J., dissenting.

WHITHAM, Justice, dissenting.

I respectfully dissent. In my view the trial court correctly determined that there were no genuine issues of fact and that Texas Employers was entitled to summary judgment as a matter of law.

I cannot agree that an employment relationship was created between Christian and Affiliated. Christian had but one employment—to work undercover at Affiliated. Christian had but one employer—Cannon—who placed him undercover at Affiliated. To obtain and maintain the *cover* to provide a shield *under* which he could carry out his duties to Cannon, Christian was required to present every *appearance* of an employee of Affiliated. Christian did so. Indeed, the evidence relied on by the majority to establish employment by Affiliated is nothing more than evidence that Christian established and maintained the *appearance* of employment by Affiliated. To my mind mere *appearance* does not create an employment relationship between Christian and Cannon.

Moreover, and contrary to the majority's suggestion, Christian's undercover activities had not ceased prior to his injury. Christian's final report to Cannon dated September 26, 1980, two days after the time of Christian's injury, confirms as much. Thus, seeking a means to avoid the

September 26, 1980, date, the majority attempts to negate surveillance by Christian at the time of his injury by referring to his deposition testimony that he could not hear or understand the language Affiliated employees were speaking. In my view, the majority's efforts to negate surveillance on that basis is hollow. Undercover work is more than hearing or understanding language. It includes observing persons and their actions as well.

In my view, Affiliated never "borrowed" a truck driver from Cannon as the majority holds. In so holding, the majority finds an employment relationship in an adult game of "let's pretend." To do so ignores the facts of life in the business and industrial world of today. I cannot agree that a necessary business practice of undercover surveillance creates a true employment relationship between the undercover agent and the client of the undercover agent's employer. The trial court recognized the realities of the business world and I would affirm its judgment.